C & A CARBONE, INC., Recycling Products of Rockland, Inc. and C & C Realty, Inc., Plaintiffs,

v.

The TOWN OF CLARKSTOWN and Clarkstown Recycling Center, Inc., Defendants.

No. 91 Civ. 2105 (CLB).

United States District Court, S.D. New York.

July 11, 1991.

---

David Silverman and Ricki Berger, Granik, Silverman, Sandberg, Campbell, Nowicki & Resnick, New City, N.Y., for plaintiffs.

Edward Costikyan and Theodore Haas, Paul, Weiss, Rifkand, Wharton & Garrison, New York City, for defendants.

## MEMORANDUM AND ORDER

BRIEANT, Chief Judge.

On March 27, 1991 plaintiffs commenced this action alleging violations of Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. 1, *et seq.*, Section 4 of the Clayton Act, 15 U.S.C. § 15, *et seq.*, and Section 1983 of the Civil Rights Act of 1964, 42 U.S.C. § 1983. Plaintiffs seek injunctive relief and damages for injury to their business.

This Court has subject matter jurisdiction over the claims set forth in the complaint pursuant to Sections 1331, 1337 and 1343 of Title 28 of the United States Code. Since plaintiffs and defendants have their office and principal place of business in Clarkstown, New York, venue in this district is appropriate 28 U.S.C. § 1391(c).

On June 5, 1991, the Court heard oral argument on (1) plaintiffs' motion for an Order of this Court granting a preliminary injunction against the enforcement of Local Law No. 9 of 1990 as adopted by the Town of Clarkstown and (2) defendant Town of Clarkstown's motion to dismiss the complaint pursuant to Rule 12(b)(6) and/or for summary judgment pursuant to Rule 56 or, in the alternative, to dismiss or stay this case on abstention grounds. Both motions were marked fully submitted decision reserved on the same date.

The underlying facts are not in dispute. Plaintiffs are engaged in the business of recycling and solid waste disposal. Solid waste is brought to their facility in Clarkstown from both within and without New York state. This solid waste is processed for $70 per ton and that which is recyclable is baled or otherwise packaged and sold to facilities outside New York state. The remaining solid waste is baled and sold to "resource recovery centers" (or facilities which burn the solid waste to create power) or placed in landfills outside Clarkstown.

On August 7, 1989, Clarkstown entered into a consent order with the New York Department of Environmental Conservation which required the town to cease operations at its own landfill and establish a transfer station as an alternative method of managing the solid waste in the town. *See* Doc. No. 8, Ex. A. Thereafter, the town entered into an agreement with defendant Clarkstown Recycling whereby Clarkstown Recycling would build a transfer station facility and the town, in turn, would guarantee a certain amount of tonnage or suffer a penalty. *See* Doc. No. 9, Ex. A. Pursuant to the terms of this exclusive arrangement, Clarkstown Recycling is permitted to charge haulers $81 per ton to dispose of any and all solid waste that enters the territorial limits of Clarkstown, without regard to whether that solid waste is generated within or without Clarkstown. The agreement also provides that when the arrangement expires in five years, the Town can acquire the facility for $1.00.

In December of 1990, in aid of the arrangement, the town adopted Local Law No. 9 of 1990. Section 5(A) of Local Law No. 9 provides in relevant part:

It shall be unlawful, within the Town, to dispose of or attempt to dispose of acceptable or unacceptable waste of any kind generated or collected outside the territorial limits of the Town of Clarkstown, except for acceptable waste disposed of at a Town operated facility, pursuant to agreement with the Town of Clarkstown and recyclables, as defined in Chapter 82 of the Clarkstown Town Code, brought to a recycling center established by special permit pursuant to Chapter 106 of the Clarkstown Town Code.

On March 9, 1991, town police officers responded to a motor vehicle accident that had occurred on the Palisades Interstate Parkway when a tractor trailer struck the Route 59 overpass and spilled solid waste onto the parkway. *See* Doc. 11, Exs. C, D. The trailer was hauling solid waste from plaintiffs' facility to a landfill in Indiana. On March 13, 1991, the town police obtained a search warrant that directed them to search the plaintiffs' premises for books and records maintained in the business of

solid waste disposal. On March 14, 1991, the town produced the property seized to an FBI agent pursuant to a grand jury subpoena signed by the U.S. Attorney for the Southern District of New York.

Then, on March 18, 1991, the town filed suit and brought an Order to Show Cause against C & A Carbone in the Supreme Court of the State of New York, Rockland County, seeking to enjoin and restrain C & A Carbone and others from "operating a transfer station and from unlawfully disposing of solid waste within the Town of Clarkstown," in violation of Local Law No. 9. On March 20, 1991, the State Court granted a temporary restraining order which provides in pertinent part that "the defendants [C & A Carbone, Inc., Recycling Products of Rockland, Inc., C & C Realty, Inc. and Angelo Carbone] be and they are hereby restrained and enjoined from operating a transfer station and from unlawfully disposing of solid waste generated within the Town of Clarkstown, and the defendants shall immediately cease all illegal business operations at the premises known as 183 Western Highway, West Nyack, New York, pending the hearing of [the Town of Clarkstown's] motion...." *See* Doc. 8, Ex. H. The town's motion for a preliminary injunction in the New York Supreme Court has been marked fully submitted, decision reserved by Justice Robert J. Stolarik.

Also pending in the New York Supreme Court, Appellate Division, Second Department, is the Town's appeal of the determination of the Hon. Alfred Weiner, Acting Supreme Court Justice, in a related Article 78 proceeding. By decision dated February 27, 1991, Justice Weiner ordered the Town Board of the Town of Clarkstown to issue plaintiffs a special permit to allow the maintenance and use of a portion of plaintiffs' site on Western Highway as a "recycling facility," as defined in Section 106.3 of the Zoning Code of the Town of Clarkstown. *See* Doc. 11, Ex. G.

The following constitutes this Court's findings and conclusions as required by Rule 65 of the Federal Rules of Civil Procedure and is the decision of this Court.

*Antitrust*

In the instant case, plaintiffs' first contention is that they are entitled to damages and injunctive relief under the Sherman Act, 15 U.S.C. § 1 *et seq.*, and the Clayton Act, 15 U.S.C. § 15 *et seq.* The federal law is clear, however, that neither form of relief is available to plaintiffs based on the alleged anti-competitive effect of the Local Law.

▪ As a preliminary matter, this Court notes that local governments are immune to damage claims under the antitrust laws. *See* Local Government Antitrust Act, 15 U.S.C. §§ 34–36. Section 35(a) provides:

No damages, interest on damages, costs, or attorney's fees may be recovered under section 15, 15a, or 15c of this title from any local government, or official or employee thereof acting in an official capacity.

15 U.S.C. § 35(a).

▪ Regardless of the type of relief sought, a town is immune to claims asserted under the antitrust laws, where the State has authorized the anti-competitive actions complained of. *See Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985). It is undisputable that there are several New York statutes which authorize local control over the disposal and dumping of local garbage. *See* N.Y.Town Law, §§ 130, 198(9), 221 (McKinney 1987 & Supp.1991); N.Y.Gen.Mun.Law § 120-w (McKinney 1986 & Supp.1991). In addition, Environmental Conservation Law § 27-0711, N.Y.Envtl.Conserv.Law § 27-0711 (McKinney 1984 & Supp.1991) expressly recognizes the significant role of local government in regulating solid waste management. As such, the state action exemption has been repeatedly recognized in cases dismissing antitrust claims based on local governments' actions regarding solid waste management. *See e.g. Hancock Industries v. Schaeffer*, 811 F.2d 225, 232–36 (3d Cir. 1987).

Our full understanding of this issue requires reference to the Supreme Court's recent decision in *City of Columbia, et al.*

*v. Omni Outdoor Advertising, Inc.,* — U.S. ——, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991), in which the Court held the Sherman Act inapplicable to anticompetitive restraints imposed by local governments implementing state policy. The issue considered in *City of Columbia* was whether there is a "conspiracy" exception to the rule that any action that qualifies as a state action or an authorized implementation of a state policy is automatically thereby exempt from the operation of the antitrust laws.

Citing its landmark decision in *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) and relying on the principles of federalism and state sovereignty, a majority of the Court held that a city's restriction on billboard construction is immune from federal antitrust liability where the municipalities' restriction is an authorized implementation of state policy. The Court rejected "any interpretation of the Sherman Act that would allow plaintiffs to look behind the actions of state sovereigns to base their claims on 'perceived conspiracies to restrain trade,'" *City of Columbia,* — U.S. at ——, 111 S.Ct. at 1353, even if a state or its municipality acts as a conspirator with private actors in the restraint of trade.[1]

Since the anti-competitive provisions of Local Law 9 are the foreseeable result of New York State enabling law concerning solid waste collection and disposal and the Town of Clarkstown's Local Law is an implementation of authorized state policy, this Court is constrained to find that the conduct of the Town complained of is exempt under the antitrust laws. The Court further concludes that there is no genuine issue of material fact concerning either the Clayton Act or the Sherman Act claim and that defendant is entitled to a judgment on these claims as a matter of law. Accordingly, this Court denies so much of plaintiffs' motion based on these claims and grants defendant's motion for summary judgment insofar as these motions relate to the antitrust claims.

*Civil Rights*

In addition to those claims raised under the Sherman Act and the Clayton Act, plaintiffs also assert a claim based on a violation of their civil rights pursuant to 42 U.S.C. § 1983. In particular, plaintiffs assert that the Town's local law constitutes an unreasonable and therefore unlawful burden on interstate commerce, and deprives plaintiffs of their property without due process and denies equal protection. The Town responds that the law fulfills a legitimate state purpose by reasonable means. This presents a triable issue.

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof, to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. Thus, to establish a claim under Section 1983, plaintiffs would have to convince the trier of fact that (1) the conduct complained of was committed by persons acting under color of state law; (2) this conduct deprived plaintiffs of rights, privileges or immunities secured by the constitution or laws of the United States; and (3) that defendants' acts were the cause of injuries and/or consequent damages sustained by plaintiffs.

■ Most recently, in *Dennis v. Higgins,* — U.S. ——, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991), the Supreme Court recognized that claims based on a violation of the Commerce Clause are justiciable in this Court under 42 U.S.C. § 1983. In *Dennis,* the Court recognized that the Commerce Clause confers "rights, privileges, or immunities" upon persons within the meaning of Section 1983.

■ While the first element of the Section 1983 claim is met in that whatever

---

**1.** The Court noted, however, that while such action may be exempt from the operation of the antitrust laws "Congress has passed other laws aimed at combatting corruption in state and local governments." *City of Columbia,* — U.S. at ——, 111 S.Ct. at 1353.

defendant Town of Clarkstown did was action under color of state law, there is a factual dispute as to whether Local Law No. 9 deprives plaintiffs of their rights under the Commerce Clause and, if so, what damages plaintiffs sustained. Defendant's motion is denied to the extent it relates to this claim.

### Seized Documents

■ Plaintiffs also seek to recover documents seized pursuant to the March 13, 1991 search warrant said to have been unreasonably retained in violation of the Fourth Amendment and Section 1983. Of course the town is entitled to retain the fruits of its duly authorized search but only so long as the exigencies of criminal prosecution require retention of the property as evidence. *In re Documents Seized Pursuant to Search Warrant,* 124 Misc.2d 897, 478 N.Y.S.2d 490, 496 (1984). It is impossible, however, to resolve this issue of fact on a motion for summary judgment, so that portion of the defendant's motion is also denied.

### Abstention

Alternatively, the Town requests that this Court abstain under *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) or *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

■ As a matter of discretion this Court declines to abstain. Abstention is "the exception, not the rule," *Colorado River Water Conservation District,* 424 U.S. at 813–16, 96 S.Ct. at 1244–1246, and "there is substantial authority for the proposition that abstention is not favored in [a] ... civil rights case brought as was this one under 42 U.S.C. § 1983 and 28 U.S.C. § 1343." *Mayor of Philadelphia v. Educational Equality League,* 415 U.S. 605, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974) (footnote omitted). In finding abstention inappropriate, this Court gives considerable weight to the fact that Section 1983 provides a unique federal remedy based on the Constitution and was enacted to redress inade-

quate state law remedies. *See Mitchum v. Foster,* 407 U.S. 225, 238–242, 92 S.Ct. 2151, 2159–2162, 32 L.Ed.2d 705 (1972).

■ This Court also concludes that abstention would not be justified under the doctrine of *Younger v. Harris, supra.* Contrary to defendants suggestion, "*Younger* abstention is [not] always appropriate whenever a civil proceeding is pending in a state court." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 14 n. 12, 107 S.Ct. 1519, 1527 n. 12, 95 L.Ed.2d 1 (1987). *Younger* abstention is appropriate only if (1) there are pending state judicial proceedings, (2) the state proceedings implicate important state interests, and (3) the state proceedings provide an adequate opportunity to raise federal questions. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982).

Arguably, the first and third requirement are satisfied in this case. The second is not, however, because this case does not implicate the kind of state interest that commands *Younger* abstention. Although the New York State Supreme Court necessarily has some interest in this proceeding, this Court is not convinced that an interest that is vital to the operation of state government is involved. As the Supreme Court cautioned in *Pennzoil, supra,* abstention under *Younger* is appropriate only "if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Pennzoil,* 481 U.S. at 11, 107 S.Ct. at 1526.

### Preliminary Injunctive Relief

■ To obtain a preliminary injunction, the movant must demonstrate: "(a) irreparable harm [if the preliminary injunction does not issue] and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979). *See Stormy Clime Ltd. v. Pro-*

*group, Inc.*, 809 F.2d 971, 973 (2d Cir.1987). Therefore, to prevail on this motion, plaintiffs must show both that irreparable harm to it will result if enforcement of the Town's ordinance is not enjoined and that they are likely to prevail on the merits of the claims asserted.

Insofar as Local Law No. 9 limits or otherwise prohibits the disposal without the Town of *solid waste generated without the Town*,[2] but processed at plaintiff's facility in Clarkstown, the Court finds that plaintiffs have demonstrated a likelihood of success on the merits of their claim. Although ostensibly Local Law No. 9 was promulgated to protect the health and environment of the residents of Clarkstown from the hazards associated with dumping solid wastes in landfills, the Town cannot legislatively slow down or prohibit the flow of commerce, in this case, interstate solid waste products, by artificially inflating the price of processing solid waste generated without the Town from $70/ton to $81/ton and thereby augment the economic security of the Town.

It does not seem likely that the Town's interest in meeting its tonnage requirements to defendant Clarkstown Recycling Center, Inc., and in so doing avoid a penalty for each ton under the requisite annual minimum of 120,000 tons (*see*, Doc. No. 11, Ex. E, ¶ 4), can constitutionally justify the requirement that solid waste processors and carters expend the sum of $81/ton, rather than the $70/ton they paid prior to the enactment of Local Law No. 9, to process and cart the same without of Town solid waste to the same without of Town facilities. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970) (a state's interest in enhancing the reputation of local products did not justify the requirement that a company build a packing plant in that state). Nor can the Town shift or defray the cost of disposing of local solid waste for the benefit of local residents to out-of-state persons or interests by improperly restricting competition

and overtly blocking the interstate transportation of solid waste generated out of Town.

Thus, this Court concludes that it is likely that plaintiffs can demonstrate that the Local Law constitutes an unreasonable, discriminatory and impermissible burden on interstate commerce in violation of the United States Constitution.

■ Since plaintiffs have established the requisite likelihood of success on the merits of the commerce clause claim, the Court turns its attention to the issue of irreparable injury. The essential element of irreparable harm has been defined to mean injury for which monetary award cannot be adequate compensation. Therefore, "it has always been true ... that where money damages is adequate compensation a preliminary injunction will not issue." *Jackson Dairy Inc.*, 596 F.2d at 72. The importance to the movant of demonstrating clearly and convincingly exactly why money damages are inadequate cannot be overstated. *See, e.g., Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 57–65, 95 S.Ct. 2069, 2075–2079, 45 L.Ed.2d 12 (1975).

Inasmuch as plaintiffs have demonstrated that Local Law No. 9 threatens to or actually deprives plaintiffs of their constitutional rights, privileges or immunities under the Commerce Clause, this deprivation unquestionably constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373–374, 96 S.Ct. 2673, 2689–2690, 49 L.Ed.2d 547 (1976) (deprivation of constitutional right held to constitute irreparable injury). Moreover, absent the grant of a preliminary injunction, plaintiffs will be precluded from continuing the operation of their interstate disposal of solid waste generated without the territorial limits of the Town of Clarkstown. Because realistically it would not be possible to measure plaintiffs actual loss of customers and good will that will necessarily occur, the injury to plaintiffs would likely be irreparable.

---

**2.** This Court assumes, without deciding the issue, that the Town can regulate the disposal of garbage generated *within* the Town's territorial limits. In fact, plaintiffs do not dispute that

Clarkstown may regulate solid waste generated within its borders or that which the Town contracts to dispose of for other municipalities. *See* Doc. 20, at 2.

In determining whether or not to grant a preliminary injunction, this Court has also given considerable weight to the public interest in the efficient, economical and environmental safe disposal of solid wastes. While Rule 65 does not expressly mention the public interest, our Court of Appeals has recognized that a district court "may go much further both to give or to withhold [injunctive] relief in furtherance of the public interest than where only private interests are involved." *Standard & Poor's Corporation, Inc. v. Commodity Exchange, Inc.*, 683 F.2d 704, 711 (2d Cir. 1982) (citations omitted).

Thus, in deciding to grant a preliminary injunction in the instant case, this Court recognizes, as did Chief Justice Rehnquist, in his dissenting opinion in *Philadelphia v. New Jersey*, 437 U.S. 617, 629–630, 98 S.Ct. 2531, 2538–2539, 57 L.Ed.2d 475 (1978), the national importance of the sanitary treatment and disposal of solid waste. If Local Law No. 9, in effect, increases the cost of shipping solid wastes through the Town of Clarkstown, and thereby limits the flow of interstate commerce, Clarkstown's health and environmental concerns may be served but the interest of the public will be compromised. Thus, this Court concludes that the need to protect the public from the extremely serious health and safety problems associated with solid waste disposal and the attendant costs of doing so provides a strong ground for the maintenance of a preliminary injunction.

A preliminary injunction is granted prohibiting the enforcement of Section 5(a) of Local Law No. 9 against plaintiffs except insofar as it concerns locally generated solid waste originating within the boundaries of the Town of Clarkstown.

*Summary*

The Court grants defendant's motion for summary judgment but only insofar as it relates to plaintiffs' antitrust claims. The motion is denied in all other respects. The Court at present declines to make the finding contemplated by Rule 54(b) of the Federal Rules of Civil Procedure.

Nothing in this opinion shall be construed to relate to the issue presently pending before the Appellate Division of the Supreme Court, on appeal from the Hon. Alfred Weiner, Acting Supreme Court Justice.

All counsel appearing in this action are directed to appear at Courtroom 31, United States Courthouse, 101 East Post Road, White Plains, New York on September 16, 1991 at 9:00 AM, for the purpose of a status report conference and to set a trial date.

Settle judgment, providing specific direction as to the bond posted pursuant to Rule 65(c), on waiver of notice of settlement or five (5) days notice of settlement.

SO ORDERED.