**CHEM-TREND INCORPORATED, a Michigan corporation, Plaintiff,**

v.

**Devin F. McCARTHY and Franklynn Industries, Inc., Jointly and Severally, Defendants.**

**Civ. A. No. 91–CV–40315–FL.**

United States District Court, E.D. Michigan, S.D., Flint.

Dec. 9, 1991.

Bruce T. Wallace, Anthony P. Patti, Hooper, Hathaway, Price, Beuche & Wallace, Ann Arbor, Mich., for plaintiff.

Paul J. O'Reilly, Bert T. Ross, O'Reilly, Rancilio, Nitz, Andrews & Turnbull, P.C., Sterling Heights, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Before the Court is the plaintiff's motion for a preliminary injunction. After response and reply briefs were filed, the parties conducted additional depositions in lieu of an evidentiary hearing. Supplemental briefs were filed to argue the additional information developed during those depositions. For the reasons which follow, the plaintiff's motion is GRANTED.

The case arises out of a former employment relationship between the plaintiff, Chem–Trend, and the defendant, Devin McCarthy. Chem–Trend is in the business of making mold release agents, which are chemicals that release rubber pieces from the mold which formed them. After 8 years with Chem–Trend, McCarthy became dissatisfied, and considered starting his own business to compete with Chem–Trend. He allegedly developed his own formula, had other people in the field (some of whom were customers) test his product, and then made his break with Chem–Trend by starting a competitive business called Franklynn Industries, Inc. McCarthy alleges that he never marketed his product while working for Chem–Trend, and that he worked diligently selling Chem–Trend's products until he left the company.

Chem–Trend brought this suit alleging breach of contract (confidentiality agreement), breach of fiduciary duty (selling McCarthy's product when working for Chem–Trend), misappropriation of trade secrets and confidential information (using the formulas and customer lists), and tortious interference with contractual or economic relations (using Chem–Trend's customer list), and seeking damages, and preliminary and permanent injunctive relief.

In its supplemental brief, Chem–Trend states that the focus of this motion is to enjoin McCarthy and Franklynn Industries from soliciting and servicing Chem–Trend's former customers. To justify a preliminary injunction, four prerequisites must be met: 1) the plaintiff has a substantial likelihood of success on the merits; 2) irreparable harm or injury will result in the absence of an injunction; 3) the harm to the movant in the absence of an injunction outweighs the harm to the non-movant that would result from an injunction; and 4) the issuance of an injunction will serve the public interest. *Mason County Medical Ass'n v. Knebel,* 563 F.2d 256, 261 (6th Cir.1977).

## I.

## SUBSTANTIAL LIKELIHOOD OF SUCCESS

As stated above, the plaintiff focuses its motion on the defendants' involvement with former Chem–Trend customers. Its briefs focus on McCarthy's breach of his fiduciary duties to his former employer, and the breach of his employment contract.

It is clear to the Court that, during his employment with Chem–Trend, McCarthy was an agent for his employer.

McCarthy was a "go-between" who solicited customers and made sales to those customers on behalf of his principal, Chem–Trend. McCarthy was given the authority to demonstrate Chem–Trend products, take orders for Chem–Trend

materials, communicate confidential client needs, and engage in the invoicing and delivery process.

Plaintiff's Brief in Support of Motion for Preliminary Injunction, at 12.

At the same time that McCarthy was acting as Chem–Trend's agent, he was testing his own product, solicited Chem–Trend customers, allegedly to test his product, entered his product, under a fictional name, into trade shows, sold his product to Chem–Trend customers, and sabotaged the very relationships he was supposed to be promoting in order to obtain business at the expense of his employer-principal.

All of this activity took place while McCarthy was still working for Chem–Trend, and is an obvious breach of his fiduciary duty. *Stephenson v. Golden*, 279 Mich. 710, 276 N.W. 849 (1937); RESTATEMENT (SECOND) AGENCY, § 396(b). The plaintiff has established substantial likelihood of success on its breach of fiduciary duty claim.

In addition, McCarthy breached the "Outside Business Activities" clause of his employment contract.

> All CHEM–TREND salesmen and other full-time employees shall devote their full working time, attention and efforts to the Company's business and shall not, directly or indirectly, engage in any other business or commercial activities which shall conflict or interfere with or distract from in any way the performance of the employee's responsibilities to the Company or which involve any activities similar to the business conducted by CHEM–TREND.

Chem–Trend Incorporated Employee Manual for Commission Salesmen, at 8 (attached as Exhibit 2 to Plaintiff's Motion for Preliminary Injunction). The activities listed above appear likely to violate this provision of McCarthy's contract with Chem–

Trend, and thus there is a substantial likelihood of success on the merits of the plaintiff's breach of contract claim.

The defendants argue that McCarthy merely made preparations to leave Chem–Trend and preparations to start his own business. "The mere planning and preparation by an employee during the term of his employment to engage in a competing business after termination of his employment does not constitute a breach of his duties as an employee." Defendant's Brief in Opposition to Motion for Preliminary Injunction, at 6 (citing *Myers v. Roger J. Sullivan Co.*, 166 Mich. 193, 195–96, 131 N.W. 521 (1911)). The problem with this argument is that the record indicates that McCarthy did more than just prepare. The defendant argues that he did not promote his product, but merely had the customers evaluate it for him so that he could determine whether to leave Chem–Trend and enter into direct competition. I think the defendant will have a tough time factually establishing the distinction between customers testing McCarthy's product and McCarthy promoting the product.

I believe the plaintiff has established a substantial likelihood of success on the merits.[1]

## II.

### IRREPARABLE HARM

The defendants make three arguments against the injunction. First, they argue that the plaintiff has an adequate remedy at law. Additionally, more than a mere suspicion or apprehension of injury, but "a substantial threat of impending injury," is necessary to justify the imposition of an injunction. *Allis–Chalmers Mfg. Co. v. Continental Aviation & Engineering Corp.*, 255 F.Supp. 645, 654 (E.D.Mich. 1966). Finally, the defendants contend that

---

1. Given the narrow scope of the plaintiff's request, and its focus on former Chem–Trend customers, it is unnecessary to determine the trade secrets issue at this time. The plaintiff has not sought to enjoin the defendants' business activities with customers and potential customers which were not former customers of Chem–Trend. Thus, the defendants are free to use the

formula allegedly developed by McCarthy, and market the mold release agents to entities who are not former Chem–Trend customers. I have already determined the likelihood of success on the fiduciary and contract claims. I do not have to consider at this time the trade secret issue.

the use of Chem–Trend's customer lists is not subject to injunction. "Courts tend to feel that it is unreasonable and inequitable to enjoin a party from using what he could acquire with a modest expenditure of time and money." Defendant's Brief in Opposition to Motion for Preliminary Injunction, at 11–12 (quoting Cornelius, *Michigan's Law of Trade Secrets and Covenants Not to Compete: Chapter 2,* 66 U.Det.L.Rev. 1, 40 (1988)).

The plaintiff claims the wrongful use of more than just the easily accessed customer lists. At risk is more than just the names of Chem–Trend's customers. McCarthy has intimate knowledge of the relationship between Chem–Trend's customers and his former employer, including the special needs of the customer, and the prices quoted for different products. This information is not legitimately available for any amount of money, and McCarthy could acquire it from nowhere else.

In support of its argument that the customer information is readily available to the public, the defendants' brief in response refers to Exhibit 4, attached thereto, to demonstrate the availability of the information in a trade catalog. The Court has reviewed Exhibit 4 and the information contained in the sample entries supplied by the defendants. I have no doubt that McCarthy had more extensive knowledge of the needs of the customers he serviced as a Chem–Trend salesman, the special efforts made by his employer to service those needs, and the pricing strategies and quotes used by the plaintiff to obtain and maintain those customers in the face of stiff competition. It is this information upon which McCarthy had a fiduciary duty to act for the interests of his employer and no one else, least of all himself. Enjoining the wrongful use of this information would not be unreasonable or inequitable.

■ The plaintiff claims a loss of good will, resulting from McCarthy's solicitation of his employer's customers, and the sabotage of the relationship between Chem–Trend and its customers. Plaintiff cites *Ecolaire, Inc. v. Crissman,* 542 F.Supp. 196 (E.D.Pa.1982). "[T]he value of [the plaintiff's] good will and trade secrets cannot be measured in monetary terms. Accordingly, it has been held that injury to a company's good will constitutes irreparable injury." *Id.* at 205 (citing *Franklin Mint, Inc. v. Franklin Mint, Ltd.,* 331 F.Supp. 827 (E.D.Pa.1971)). *See also Economou v. Physicians Weight Loss Centers of America,* 756 F.Supp. 1024, 1039 (N.D.Ohio 1991) (citing cases concluding that diminished reputation, loss of good will and consumer confusion are irreparable injury).

I have been unable to locate any cases from the Sixth Circuit or from Michigan district courts regarding the reparable nature of a business' good will. The district court in Maine has held that, in some cases, a company's good will can be compensable in money damages. *Clemente v. Pearle Vision, Inc.,* 762 F.Supp. 1518 (D.Me.1991); *C–B Kenworth, Inc. v. General Motors Corp.,* 675 F.Supp. 686 (D.Me.1987). These cases are traceable to a Second Circuit opinion in *Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Co.,* 604 F.2d 755 (2nd Cir.1979) in which the court concluded that the plaintiff's concerns about "grumbling customers" were unsupported in the record. *Id.* at 762.

> Cutting through the morass of unsupported allegations of irreparable damage, the essence of Kahn's claim is for the loss of the alleged profitable business of selling Baldwin pianos, organs and other musical instruments. There is no doubt that any such loss is provable. So also, even if we take at face value Kahn's statement that it had "expended large sums promoting and advertising Baldwin's products," all these are clearly also provable as part of Kahn's damages, if the cancellation was wrongful.

*Id.* at 763.

Indeed, the same can be said of this case. The plaintiff's claim that its good will is threatened relies upon the confusion that McCarthy caused while still employed by Chem–Trend.

> The record demonstrates that McCarthy began manufacturing competitive products several years before resigning from

Chem–Trend, marketing these products exclusively to Chem–Trend's own customers several months before leaving Chem–Trend, and actually consummating bulk scale sales of these products in place of Chem–Trend products several weeks before his departure. As logic dictates, and the testimony of Guy Busch underscores, McCarthy's covert duplicity meant that Chem–Trend had no one at all inquiring and responding as to customer problems and needs, and seeking to meet those needs with Chem–Trend products, for many months. The results were predictably devastating. More than twenty customers, developed and garnered at great expense over a period of some ten years, were lost to Defendants overnight. As detailed below by Guy Busch, such McCarthy tactics as cutting off Chem–Trend credit to a long term customer and then turning around and selling his own product to that customer, left the marketplace confused, left Chem–Trend's hard-earned goodwill in a shambles, and left McCarthy in the exclusive position of appearing ready and able to grant the wishes of customers that he had for many months failed to communicate to his employer.

Plaintiff's Supplemental Brief in Support of Motion for Preliminary Injunction at 3–4. The threat to Chem–Trend's good will passed when McCarthy left its employ and ceased serving the competing profit motives of his employer and himself. What is left of Chem–Trend's irreparable injury claim, then, is the loss of a substantial amount of a customer base that was developed over many years and through a great deal of effort and investment.

The damages resulting from the loss of customers, the Second Circuit concluded, is provable, recoverable at law, and therefore not grounds for a preliminary injunction. I cannot agree with the Second Circuit's conclusion. Instead, I am swayed by the conclusion of the court in *Ecolaire* that Chem–Trend "stands to lose significant benefits of its years of development, experience and training if defendants remain free to exploit" their intimate knowledge of Chem–Trend's customers. *Ecolaire, supra* at 205. I do not believe that such losses are easily quantifiable or prone to evidentiary proofs. "Because realistically it would not be possible to measure plaintiff's actual loss of customers and good will that will necessarily occur, the injury to plaintiffs would likely be irreparable." *C & A Carbone, Inc. v. Town of Clarkstown,* 770 F.Supp. 848, 854 (S.D.N.Y.1991).

■ The problem I have is that Chem–Trend wants the injunction to stop McCarthy from servicing Chem–Trend's former customers, that are now McCarthy's present customers. The plaintiff's brief, and the supporting deposition testimony of Guy Busch, seeks "a level playing field," which would bar McCarthy and his company from former Chem–Trend customers in order to permit Chem–Trend to reestablish its relationship with those entities.[2] The plaintiff is trying to slam the door of the barn after the horses are long gone. Chem–Trend has already lost the good will of those customers that McCarthy has already obtained. Plaintiff will suffer no more loss of good will if this injunction does not issue. There can be no further irreparable injury resulting from damage to good will between Chem–Trend and its former customers.

Chem–Trend's *current* customers are a different matter. The risk to the business relationship between Chem–Trend and these customers, should an injunction not issue, is real, as demonstrated by the rapid desertion of several of Chem–Trend's customers following McCarthy's departure. The loss of these customers, as discussed above, amounts to irreparable harm.

**2.** The only way to achieve a "level playing field," to borrow from Busch's testimony, is to accord Chem–Trend an equivalent period (4–6 months) of time soliciting and servicing its former customers, to the total exclusion of McCarthy and his new company. Such an injunction will precisely mirror the total exclusion of Chem–Trend from these customers' facilities during the several months when McCarthy was surreptitiously representing himself and not Chem–Trend in the course of his sales calls.
Plaintiff's Supplemental Brief in Support of Motion for Preliminary Injunction, at 4.

Still, this injunction cannot arise from the contractual duty to devote his working hours to the promotion of his former employer's business. That duty no longer exists. Nor can it arise from the plaintiff's allegations of misappropriation of trade secrets because the plaintiff has not sought an injunction on this basis. Rather, the basis for the injunction is the continuing fiduciary duty that McCarthy owes to his former employer; the duty "not to take advantage of a still subsisting confidential relation created during the prior agency relation." RESTATEMENT (SECOND) AGENCY, § 396(b).

The problem for the Court is to enjoin only that conduct that is the subject of the claims on which the Court concludes the plaintiff has a substantial likelihood of success on the merits, i.e. its fiduciary duty claim, and on conduct that will cause irreparable injury, i.e. threaten Chem–Trend's continuing business relationship with its current customers.

I conclude that such conduct would include the solicitation of any current customers which McCarthy serviced as a Chem–Trend employee. I imagine that there are many Chem–Trend customers that were not within McCarthy's service area. The plaintiff has failed to demonstrate that McCarthy has some special knowledge of those customers' special needs, and the prices quoted to them, etc. Future contact with those customers will not be based on any information, the use of which would breach McCarthy's continuing fiduciary duty to his former employer. McCarthy and Franklynn Industries, Inc. should not be foreclosed from legitimate and fair competition for the business from these customers.

There is a threat of injury resulting from McCarthy's continued use of his knowledge of the files of the customers he used to service as Chem–Trend's agent to wrestle additional customers away from Chem–Trend. Chem–Trend will suffer irreparable injury if McCarthy and Franklynn Industries, Inc. is permitted to use that information. The injunction will prohibit McCarthy from using any information gained from his employment with Chem–Trend to wheedle any additional customers from Chem–Trend.

Thus, I find that the plaintiff will suffer irreparable injury if the defendants are permitted to use confidential, sensitive information obtained during McCarthy's employment with Chem–Trend, about the plaintiff's current customers to purloin those customers who have remained with Chem–Trend so far.

## III.

### BALANCE OF HARDSHIPS AND PUBLIC INTEREST

The balancing of the hardships to be endured by the parties if the injunction is issued or not is difficult here because both parties stand to lose so much. In a competitive business, the plaintiff cannot afford to have its client base eroded in a manner that would result were an injunction refused by this Court. On the other hand, if the injunction, as argued for by the plaintiff, were granted, the defendants would be unable to operate their business.

The Court has concluded, however, that the defendants will be enjoined only from using confidential information obtained during McCarthy's tenure at Chem–Trend to obtain *additional* customers from the plaintiff's customer base. The defendants are still permitted to service the customers they have already obtained. The risk to the defendant is thereby diminished. Not only can they service their present customers while competing in the market for non–Chem–Trend customers, they can continue to solicit current Chem–Trend customers, provided that they make no use of any of the confidential information described above. The defendants can demonstrate compliance with the injunction by displaying the permissible source of the information used to solicit or obtain a current Chem–Trend customer. Alternatively, they can demonstrate that McCarthy did not have access to this information during his employment at Chem–Trend. The balance of harms, therefore, tips toward the plain-

tiff, and it is entitled to a preliminary injunction.

The public interest is served as well by the injunction, as designed by the Court. Competition is preserved because the defendants are not forced from the market, while the plaintiff's legitimate business concerns are protected as well.

For these reasons, the plaintiff's motion is GRANTED. IT IS HEREBY ORDERED that the defendants, Devin F. McCarthy and Franklynn Industries, Inc., are hereby ENJOINED from using any information concerning the plaintiff's current customers, (including but not limited to, the names of customers, their special needs, and the prices quoted by Chem–Trend, Inc.), acquired by McCarthy during his employment by Chem–Trend, to solicit or otherwise seek to obtain the business of any individual or entity that is a customer of Chem–Trend as of the date of this Order.

SO ORDERED.