**CONNECTICUT CARTING CO., et al.**

v.

**TOWN OF EAST LYME, et al.**

**Civil No. 3:95CV1493 (PCD).**

United States District Court,
D. Connecticut.

Dec. 15, 1995.

**154**

Thomas J. Donohue, Jr., Robert K. Killian, Jr., Hartford, CT, Michael Feldman, Farmington, CT, for Plaintiffs.

Robert W. Marrion, Waller, Smith & Palmer, P.C., New London, CT, for Defendant, Town of East Lyme.

Edward B. O'Connell, Jr., Robert W. Marrion, Waller, Smith & Palmer, P.C., New London, CT, for Defendant, Frederick Thumm.

Edward B. O'Connell, Jr., Robert W. Marrion, David Patrick Condon, Waller, Smith & Palmer, P.C., New London, CT, for Defendant, David L. Cini.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

DORSEY, Chief Judge.

Plaintiffs, haulers of commercial waste, challenge the constitutionality of an East Lyme ordinance which regulates collection and disposal of the town's commercial waste. Both sides move for summary judgment.

### I. FACTS

East Lyme contracted with the Southeast Connecticut Regional Resource Recovery Administration ("SCRRRA") for construction and operation of a waste disposal plant in Preston ("Preston facility"). Each contracting town is allocated a share of the building and operating cost based on its anticipated volume of waste multiplied by a tipping fee, set annually by SCRRRA ("minimum commitment") and payable regardless of the waste actually delivered.

Prior town ordinances mandated that all waste generated in East Lyme be delivered to the Preston facility [1] and set a per-ton fee for waste delivered. The town billed each hauler for the amount it delivered multiplied by a per-ton fee set by the town. Haulers paid the town which paid SCRRRA.

The waste delivered to the Preston facility was less than East Lyme's minimum commitment due to its waste being hauled to other facilities which charged lower tipping fees. The result was a shortfall in the town's revenues against its SCRRRA commitment. Nonetheless the town's obligation was undiminished. The town's present ordinance requires weighing of waste collected in the town. Haulers are charged, for the waste each collects, a per-ton fee [2] set to generate revenue sufficient to cover the town's SCRRRA obligation. The fee exceeds tipping fees at nearby facilities (as low as $40–45 compared to the town's fee of $86). Haulers may deliver the waste to Preston for no further fee or to another facility and pay its tipping fee. Each hauler is at no competitive disadvantage since all haulers of town waste are subject to the same fee which haulers charge to their customers.

Plaintiffs argue that the fee has the practical design and effect of destining the waste to Preston in consequence of the economic

---

1. The town acknowledged that after the Supreme Court decision in *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994), striking down a similar flow control ordinance, it could not require haulers to dispose of East Lyme's solid waste at a specific disposal facility. (Def.'s Mem. in Support of Mot. for Summ. J. at 12.)

2. Section 8 provides:
   *Charges for Refuse Collection*
   (a) Each Refuse Collector shall pay the Town promptly when billed a charge for all Refuse collected within the town.
   (b) The charge shall be calculated by multiplying the weight of the Refuse collected by a per-ton fee to be set by the Board of Selectmen by regulation from time to time. Such per-ton fee shall be set at an amount sufficient to reimburse the Town for the cost of the Town's solid waste management program.
   (c) The weight of the Refuse collected within the Town shall be calculated by weighing each vehicle used for Refuse collection after collecting Refuse within the Town. For that purpose, each Refuse Collector shall have its vehicles weighed on scales owned and operated by the Town after collecting Refuse within the Town during the hours that scales are in operation.

disincentive to take it elsewhere. They claim an unjustifiable burden on interstate commerce in violation of the Commerce Clause.

## II. *DISCUSSION*

### A. *Summary Judgment Standard*

Summary judgment shall be granted when "the pleadings, depositions, ... and admissions on file, ... show that there is no genuine issue as to any material fact and that the moving parties are entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Movant must make this showing. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. A factual issue is "material" if it "might affect the outcome of the suit under the governing law...." *Id.* All reasonable inferences must be drawn in favor of the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513–14.[3]

### B. *Commerce Clause Analysis*

■ The Commerce Clause provides that "Congress shall have the Power ... to regulate Commerce with foreign nations and among the several States." U.S. Const. art. I, § 8, cl. 3. A "dormant" or "negative" aspect of this grant of power is that a state's power to impinge on interstate commerce is limited. *Hughes v. Oklahoma,* 441 U.S. 322, 326, 99 S.Ct. 1727, 1731, 60 L.Ed.2d 250 (1979). Solid waste, and the processing and disposing of it, is "commerce" under the Commerce Clause. *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.,* 511 U.S. 383, ——, 114 S.Ct. 1677, 1682, 128 L.Ed.2d 399 (1994); *City of Philadelphia v. New Jersey,* 437 U.S. 617, 622, 98 S.Ct. 2531, 2534, 57 L.Ed.2d 475 (1978).

■ Violation of the Commerce Clause is determined by whether the ordinance "regulates evenhandedly, with only 'incidental' effects on interstate commerce, or [if it] discriminates against interstate commerce...." *Hughes,* 441 U.S. at 336, 99 S.Ct. at 1736.[4] If it regulates evenhandedly, "it will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). If it discriminates, it violates the Commerce Clause unless there are "no other means to advance a legitimate local interest." *C & A Carbone,* 511 U.S. at ——, 114 S.Ct. at 1683; *Maine v. Taylor,* 477 U.S. 131, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986).

Defendants contend the ordinance is non-discriminatory, requiring application of the Pike balancing test. They argue the test is met because East Lyme has a legitimate interest in providing for the disposal of its solid waste.

Plaintiffs contend the ordinance is discriminatory and that there are other non-discriminatory means for achieving the legitimate purpose of disposing of the solid waste.

### C. *Discrimination*

■ A regulation can discriminate on its face or in its practical effect. *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 270, 104 S.Ct. 3049, 3054–55, 82 L.Ed.2d 200 (1984); *see Wyoming v. Oklahoma,* 502 U.S. 437, 455, 112 S.Ct. 789, 800–01, 117 L.Ed.2d 1 (1992). The challenged fee is imposed on the removal of all town waste. It applies to all haulers. It does not limit who may collect waste nor where they dispose of it.[5] It does

---

3. In opposing the motions for summary judgment, neither party submitted a statement of material facts as to which there exists a genuine issue to be tried. Accordingly, the material set forth in the statements of material fact accompanying the parties' motions for summary judgment are deemed admitted. *See* Local Rule 9(c)(1); *Dusanenko v. Maloney,* 726 F.2d 82, 84 (2d Cir.1984).

4. It is not claimed that the ordinance should be considered under the market participation excep-

tion. *See Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976). Thus it is analyzed as a regulation.

5. An underlying motive in the adoption of the ordinance, assuring delivery of waste to Preston, is found in comments of town officials. (See Pl.'s Mem. in Supp. of M. for Summ. J., Exs. 2, 9–12.)

not vary according to waste source. In these respects it is not discriminatory.

As a matter of legal obligation, custom and practice, the town has an interest in waste disposal. *See SSC Corp. v. Town of Smithtown*, 66 F.3d 502, 516 (2d Cir.1995); *B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1199 (2d Cir.1992); Comprehensive Environmental Response, Compensation, Liability Act (CERCLA), 42 U.S.C. § 9607; Conn.Gen. Stat. § 22a–220(a). By setting the fee to cover the cost to the town of disposal at Preston the hauler pays a fee equal to a tipping fee. The hauler then must choose to use the Preston facility or pay an additional fee for disposal at another site. Adding the town's fee to the cost of using other facilities discourages their use because it is cost prohibitive.

■ The effect is to remove the town's waste from the free flow of interstate commerce. Flow control ordinances which direct waste to be processed at a particular facility are invalid. *C & A Carbone*, 511 U.S. at ————, 114 S.Ct. at 1682–84; *SSC Corp.*, 66 F.3d at 514. Because it "hoards solid waste, and the demand to get rid of it, for the benefit of the preferred processing facility," *C & A Carbone*, 511 U.S. at ————, 114 S.Ct. at 1683, the effect of the fee is to discriminate against interstate commerce. It achieves the same economic protectionist effect. While the East Lyme ordinance does not dictate where the waste must be sent as in *C & A Carbone*, "Commerce Clause jurisprudence is not so rigid as to be controlled by the form by which a State erects barriers to commerce.... [The court must] determine whether the statute under attack ... will in its practical operation work discrimination against interstate commerce." *West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, ————, 114 S.Ct. 2205, 2215–16, 129 L.Ed.2d 157 (1994) (quotations omitted). An ordinance which raises costs of out-of-state

business, without affecting others, has a discriminatory effect. *See, e.g. Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 350–51, 97 S.Ct. 2434, 2445–46, 53 L.Ed.2d 383 (1977).[6]

■ Defendants argue that the SCRRRA contract, not the ordinance, creates the incentive to deliver waste to the Preston facility. To the contrary, it is the effect of the ordinance which creates an economic disincentive to deliver waste to other facilities. The ordinance requires the fee to be "sufficient to reimburse the Town for the cost of the Town's solid waste management program." Section 8(b). "Revenue generation is not a local interest that can justify discrimination against interstate commerce." *C & A Carbone*, supra. Because of the fee, other disposal facilities do not compete for East Lyme's waste on the same terms. The fee adds an expense to a hauler disposing of waste at a facility other than Preston. Thus, the added expense discriminates against other facilities by prohibiting them from competing with Preston on an equal footing.

### D. *Justification*

Once a regulation is found to discriminate, the burden shifts to the Town "to justify it both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake." *Hunt*, 432 U.S. at 353, 97 S.Ct. at 2446–47. Defendant has not met its burden. The town is obliged for payments for the Preston facility. Generation of revenue to cover its expense does not justify a burden on interstate commerce. Nondiscriminatory alternatives exist for funding East Lyme's obligations including payment by the town of its SCRRRA obligations out of general tax revenues, collection and disposal of commercial waste by the town [7] or contracting with a single hauler to collect and dispose of the town's waste.

---

**6.** The fact that the ordinance also increases the cost of doing business for in-state competing facilities to do business is immaterial, as regulations are no less discriminatory because in-state businesses are also discriminated against. *C & A Carbone*, 511 U.S. at ————, 114 S.Ct. at 1682; *Dean Milk v. Madison*, 340 U.S. 349, 354 n. 4, 71 S.Ct. 295, 298 n. 4, 95 L.Ed. 329 (1951). "[T]he

flow control ordinance favors a single local proprietor. But this ... just makes the protectionist effect of the ordinance more acute." *C & A Carbone*, 511 U.S. at ————, 114 S.Ct. at 1682.

**7.** In fact, East Lyme currently provides the services for the collection of household waste.

Thus it cannot be said that the fee is the only available means of meeting the obligation.

### E. *Relief*

Plaintiffs seek an injunction and declaratory relief. The standard for permanent injunctive relief is identical to that for preliminary injunctive relief, except that the moving party must show actual, as opposed to probable, success, on the merits. *Amoco Production Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 1404 n. 12, 94 L.Ed.2d 542 (1987). Plaintiffs achieved actual success on the merits. If enforcement of the ordinance were not enjoined, plaintiffs' right to "engage in interstate trade free from restrictive state regulation ..." *Dennis v. Higgins,* 498 U.S. 439, 448, 111 S.Ct. 865, 871, 112 L.Ed.2d 969 (1991), would continue to be violated. Deprivation of a constitutional right under the Commerce Clause constitutes irreparable injury. *See, e.g., C & A Carbone, Inc. v. Town of Clarkstown,* 770 F.Supp. 848, 854 (S.D.N.Y.1991), (threatened or actual deprivation of rights). The only means by which plaintiffs may enjoy their continued right to engage in interstate commerce free from the provisions of the ordinance is to have its enforcement enjoined.

### III. *CONCLUSION*

The fee provision of the East Lyme ordinance violates the Commerce Clause of the Constitution. The enforcement of Section 8(a) and (b) is hereby enjoined. Plaintiffs' motion for summary judgment (doc. 21) is granted. Defendants' motion for summary judgment (doc. 26) is denied.

SO ORDERED.