**RAM PRODUCTS CO., INC., Plaintiff,**

v.

**Warren C. CHAUNCEY and Replex Mirror Co., d/b/a Replex Plastics, Defendants.**

**No. 3:97 CV 77 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

June 3, 1997.

**1078**

P. Joseph Haas, Jr., Dresser Law Office, Sturgis, MI, for Plaintiff.

John J. Lorber, May, Oberfell & Lorber, South Bend, IN, for Defendants.

### MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This cause is before the court on Plaintiff's Motion for Preliminary Injunction to enforce the terms of a "non-competition" clause in a former employment contract.

### I. PROCEDURAL HISTORY

The court heard oral argument regarding the issues on February 5, 1997, at which time the court directed the parties to brief the issues. Subsequently, the parties entered into settlement negotiations with the Magistrate and requested several extensions for the filing of their briefs. The settlement conferences were ultimately unsuccessful. On March 18, 1997 the court received the parties' briefs addressing the preliminary injunction. At that time, the court expressed serious reservations regarding jurisdictional issues and requested the parties to supplement the record by briefing those issues.[1] The plaintiffs timely filed their brief. Defendants did not file a response, and have therefore waived their right to do so. This court, having considered the briefs, the record and the relevant law, now issues its ruling.

### II. JURISDICTION

This court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, as amended October 19, 1996, because the matter in controversy exceeds the sum or value of $75,000[2] and is between citizens of different states. This Court has the authority to grant injunctive relief pursuant to Federal Rule of Civil Procedure 65(a).

 If the right of recovery is uncertain, the doubt should be resolved, for jurisdictional purposes, in favor of the subjective good faith of the plaintiff. *See, Wiggins v. North American Equitable Life Ins. Co.,* 644 F.2d 1014 (4th Cir.1981). Moreover, even where those allegations leave "grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." *Zacharia v. Harbor Island Spa, Inc.* 684 F.2d 199 (2d Cir.1982). Applying this rationale, this court resolves the jurisdictional conflict in favor of Plaintiff. If it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount will the case be dismissed for want of jurisdiction. *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938).

### III. FACTS

This court held an evidentiary hearing in South Bend on February 5, 1997. The following facts were produced. Defendant,

---

1. Specifically, the court questioned the amount in controversy. Plaintiff's complaint alleged an amount of $50,000. At the time plaintiff filed, the increased jurisdictional amount of $75,000 was required, as the amendment to 28 U.S.C. § 1332 became effective on January 16, 1997. Additionally, the complaint contained only unsupported allegations of potential lost profits and sales. Plaintiff has since filed an amended complaint and a brief on the jurisdictional issue.

2. As discussed in note 1, *supra,* While this court still has concerns regarding the amount of actual damages attributable to defendant, the court finds that plaintiff has alleged sufficient facts to proceed with the case. However, close attention should be given to 18 U.S.C. 1332(G), which authorizes cost to be assessed against the plaintiff where the recovery is less than the jurisdictional amount. It has been this court's practice to do such.

Warren C. Chauncey (Chauncey), is an Indiana resident. He briefly held the position of Vice President of Sales and Marketing while employed at RAM Products. He is fifty-nine years old and has been in the plastics industry for twenty-five years. Defendant, Replex Plastics (Replex), is an Ohio Corporation. Chauncey is now employed by Replex and currently holds a management position with the company. Plaintiff, RAM Products (RAM) is a Michigan corporation. RAM and Replex are both in the plastics industry. RAM manufactures and sells acrylic and polycarbonate mirrors and related products. Replex manufactures only acrylic and polycarbonate mirrors. There are other companies currently manufacturing the same products and competing in the same market.

The employment contract in controversy was entered into between Chauncey and RAM in St Joseph County, Michigan on November 18, 1991. That contract contained a clause prohibiting former employees from competing against RAM for a period of one year after termination of employment with RAM. On December 3, 1996, Chauncey was released from his employment at RAM. Shortly thereafter he commenced employment with Replex. Plaintiff contends that this was a breach its former employment contract and covenant not to compete. Specifically, Plaintiff alleges that Chauncey has converted and continues to convert RAM's property and trade secrets and has made derogatory remarks regarding RAM to its customers and the general public. Plaintiff argues that Chauncey's breach of contract causes irreparable harm to it through the disclosure of confidential information, the loss of client confidence, loss of goodwill and loss of business reputation. As a result, Plaintiff asks this court to issue a preliminary injunction requiring Chauncey to cease his employment with Replex until the one year time period required by contract has expired. Furthermore, Plaintiff requests that Chauncey be restrained from working for any other competitor during the one year period.

Defendant Chauncey asserts that he is not violating his former employment contract.

He claims the contract is void due to RAM's failure to perform certain provisions of the contract. He further alleges that the non-competition clause is overly-broad and unenforceable. In addition, he claims he has not disclosed any trade secrets or confidential information. Both parties agree that Chauncey did not take any documents or records with him when he left his employment at RAM. Chauncey asserts this as proof that he has not disclosed any trade secrets.

## IV. CHOICE OF LAW

This action is based on an employment contract with no express choice of law provision. Plaintiff acknowledges that Indiana and Michigan law is similar and cites Indiana law in its brief to support its position. *See JAK Productions, Inc. v. Wiza*, 986 F.2d 1080 (7th cir.1993) (applying Indiana law). Yet, the plaintiff avers, both in oral argument and in its brief, that Michigan law applies. Defendants do not specifically apply the law of any particular state. Defendants' brief cites mainly Seventh Circuit law and includes some Indiana and Michigan law. Neither party argues that Ohio law is applicable. Therefore, prior to determining the merits of plaintiffs request for an injunction, this court must determine which state's law applies to the substantive contract issues.

As a rule, a court in a diversity case must apply the substantive law of the forum in which it sits, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including that pertaining to choice of law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *American Family Mut. Ins.. Co. v. Williams*, 839 F.Supp. 579 (S.D.Ind.1993); *Hubbard Mfg. Co., Inc. v. Greeson*, 515 N.E.2d 1071 (Ind.1987). Therefore, if the laws of more than one jurisdiction arguably are in issue, *Erie* requires the federal court to apply the choice of law rules of the state in which it sits. *Jean v. Dugan*, 20 F.3d 255 (7th Cir.1994) (*citing Klaxon Co*, 313 U.S. at 496–97, 61 S.Ct. at 1021–22); *Hubbard Mfg.*, 515 N.E.2d at 1073. Accordingly, this court will apply Indiana's choice of law rules in making its determination of which state's law governs the substantive issues.

### A. Contract Issues

The characterization of the nature of an action bears upon the choice-of-law question. The present action arises from a breach of contract claim. Formerly, in contract cases, Indiana courts applied the law of the state in which the alleged contract was made or was to be performed. *See Hubbard Mfg., supra; Travelers Ins. Co. v. Rogers,* 579 N.E.2d 1328 (Ind.Ct.App.1991). The focus upon performance, in most instances, resulted in application of the law where the breach took place. That rule was modified, however, to allow application of the law of the state with the most significant contacts to the subject matter of the litigation be applied, regardless of the place of the breach. *W.H. Barber Co. v. Hughes,* 223 Ind. 570, 63 N.E.2d 417 (1945); *Travelers Ins. Co.,* 579 N.E.2d at 1330. The test requires that a court analyze "all acts of the parties touching the transaction in relation to the several states involved" and apply "the law of the state with which the facts are in most intimate contact." *W.H. Barber, supra; OVRS Acquisition Corp. v. Community Health Serv., Inc.,* 657 N.E.2d 117 (Ind.Ct.App. 1995), *reh'g denied* (1996). As formulated by the Indiana Supreme Court, the rule has been stated succinctly as follows:

> The court will consider all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that state with which the facts are in most intimate contact.

*W.H. Barber, supra; Eby v. York–Division, Borg–Warner,* 455 N.E.2d 623 (Ind.Ct.App. 1983). In determining which state has the "most intimate contact", Indiana recognizes the rule as formulated by the Restatement, Second, Conflict of Laws, § 188 (1971).[3] *Coldwell Banker & Co. v. Karlock,* 686 F.2d 596 (7th Cir.1982); *Sullivan v. Savin Business Machines Corp.,* 560 F.Supp. 938 (D.C.Ind.1983). The applicable section states

that "[I]n the absence of an effective choice of law by the parties, the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2). If the place of negotiating the contract and the place of performance are in the same state, the local law of that state will usually be applied, except as otherwise provided in §§ 189–199 and 203. *Id.* at § 188(3). Also, in determining any conflicts of law questions with respect to the interpretation or enforcement of contracts, the following factors must be taken into account:

(1) A court, subject to constitutional restrictions, will follow a statutory directive or its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

---

**3.** Michigan law also recognizes the Restatement, particularly where the place of performance is not the same as the place of contracting and is not clearly defined. *See Grossman v. Aristech Chem. Corp.,* 882 F.Supp. 110 (W.D.Mich.1994), *aff'd,* 92 F.3d 1185, 1996 WL 435592 (6th Cir. 1996). In addition, Michigan courts recognize

the national trend toward adoption of the Restatement approach emphasizing the law of the place having the most significant relation with the matter in dispute. *See Chrysler Corp. v. Skyline Indus. Serv., Inc.,* 448 Mich. 113, 528 N.W.2d 698 (1995); 16 Am.Jur.2d, Conflict of Laws, § 83, pp. 140–141.

(g) ease in the determination and application of the law to be applied.

See RESTATEMENT (SECOND) CONFLICT OF LAWS: Choice of Law Principles § 6, p. 10; *Curtis 1000, Inc. v. Youngblade,* 878 F.Supp. 1224 (N.D.Iowa 1995).

 Applying the above principles this court now considers the relevant factors to determine whether Michigan or Indiana substantive law applies to the claims at issue.

### 1. Indiana's Relationship

Indiana maintains at least some interest in the present action. Defendant Chauncey is an Indiana resident. Indiana has an interest in protecting its citizens rights to earn a livelihood. *See Consumer Satellite Systems, Inc. v. Howland,* No. 1:94–CV–183, 1994 WL 669673 (W.D.Mich. Aug.25, 1994). Furthermore, Indiana's public policy disfavors noncompetition clauses. *See Udell v. Standard Carpetland USA, Inc.,* 149 B.R. 908 (N.D.Ind.1993); *Prudential Insurance Co. of America v. Crouch,* 606 F.Supp. 464 (S.D.Ind.1985), *aff'd,* 796 F.2d 477 (7th Cir. 1986). In addition, both the plaintiff, RAM, and one of the defendants, Replex, transact business in Indiana. Indiana has an economic interest in the ability of companies to conduct business there. Certainly, the final resolution of the case may have some economic impact on Indiana.

### 2. Michigan's Relationship

In determining the state where the facts are in "most intimate contact" the court notes that defendant RAM is a Michigan corporation. Additionally, both RAM and Replex transact business in Michigan. Similar to Indiana, Michigan has an interest in protecting its corporations and in protecting the ability of companies to conduct business in the state. As a result, Michigan also has an economic interest in this case. Furthermore, while there is no indication of where the negotiations for this contract occurred, the "home office" for which Chauncey worked was located in Michigan. In addition, the employment agreement in question was formed in Michigan. Moreover, Michigan public policy and statutes favor noncompetition covenants as long as they are reasonable. *See* M.C.L.A. 445.744a; *Robert Half Int'l, Inc. v. VanSteenis,* 784 F.Supp. 1263 (E.D.Mich.1991); *Monsanto Co. v. Manning,* 841 F.2d 1126, 1988 WL 19169 (6th Cir.1988).

Based on the above facts, this court finds that the balance of factors tips slightly in favor of Michigan's interests, therefore, this court will apply Michigan law to resolve the substantive contract issues.

### B. Tort Issues

 Plaintiff also includes a claim for interference with a business contract in Count II of its Verified Complaint. This action arises in tort. Indiana's choice of law rules dictate that when an action arises in tort the trial court must first ask where the last event necessary to give rise to liability occurred. *American Family,* 839 F.Supp. 579. This is the traditional *Lex loci delicti commissi* rule. *Big Rivers Elec. Corp. v. General Elec. Co.,* 820 F.Supp. 1123 (S.D.Ind. 1992). Secondly, the court must ask whether the place of the last event bears any connection to the legal action, and if the place of the last event has sufficient connection to the legal action, that state's law applies and the inquiry is concluded. *American Family,* 839 F.Supp. at 582. However, if the place of the last event does not have sufficient connection, the court moves to the third step and considers the place where the conduct causing the injury occurred, the residence or place of business of the parties, and the place where the relationship is centered. *Id.; Big Rivers,* 820 F.Supp. at 1125; *Jean,* 814 F.Supp. 1401.

 In the present case, the last event necessary to give rise to liability occurred in Ohio when defendant Chauncey entered into an employment contract with defendant Replex. Both parties agree that Ohio law is inapplicable to the present cause of action, therefore the court must continue its analysis to determine what law applies. The conduct causing the injury allegedly occurs wherever Replex does business. However, Replex's business has a direct impact on RAM corporation, which is located in Michigan. Defendant Chauncey resides in Indiana, but arguably does business in Michigan. The relationship between Replex and

Chauncey is centered in Ohio, but again, has business contacts with Michigan. The court finds that Michigan has sufficient connection to the present action. Therefore, Michigan law also applies to the tort issue.

## V. STANDARD FOR INJUNCTIVE RELIEF

■ While Michigan's state law governs the substantive contract and tort claims, federal law sets the standards for assessing whether to impose a preliminary injunction. *Southern Milk Sales, Inc. v. Martin,* 924 F.2d 98 (6th Cir.1991); *Consumer Satellite,* 1994 WL 669673. The purpose of a preliminary injunction is to preserve the status quo pending final determination of the lawsuit. *University of Texas v. Camenisch,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). It is an extraordinary remedy not to be invoked unless the movant clearly meets the burden of persuasion regarding the factors to be considered. *Zardui–Quintana v. Richard,* 768 F.2d 1213 (11th Cir.1985), *reh'g denied en banc,* 778 F.2d 793; *State of Texas v. Seatrain Int'l S..A.,* 518 F.2d 175 (5th Cir. 1975); Fed.R.Civ.P. 65.

■ In determining whether a preliminary injunction should be granted, this court must consider four factors:

(1) whether RAM has some likelihood of succeeding on the merits of its claim at trial;

(2) whether RAM will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue;

(3) whether the threatened injury to RAM outweighs the threatened harm the injunction may inflict on the defendants: and

(4) whether the granting of the preliminary injunction will disserve the public interest.

*Gateway Eastern Ry. Co. v. Terminal R.R. Ass'n of St. Louis,* 35 F.3d 1134 (7th Cir. 1994); *Duct–O–Wire Co. v. U.S. Crane, Inc.* 31 F.3d 506 (7th Cir.1994); *Basicomputer Corp. v. Scott,* 973 F.2d 507 (6th Cir.1992); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Grall,* 836 F.Supp. 428 (W.D.Mich.1993); *Tanford v. Brand,* 883 F.Supp. 1231 (S.D.Ind.1995). District courts must balance these four factors and must not construe them as "prerequisites that must be met." *In re DeLorean Motor Co.,* 755 F.2d 1223 (6th Cir.1985); *see also, Orbach v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 93–CV–75349–DT, 1994 WL 900431 (E.D.Mich. Jan.11, 1994). The Seventh Circuit has adopted a "sliding scale" approach when balancing the four factors. *See Gateway Eastern Ry. Co., supra.* The movant must initially meet the first two prerequisites. *Roth v. Lutheran General Hosp.,* 57 F.3d 1446 (7th Cir.1995). Then, the inquiry becomes a 'sliding scale' analysis of the harm to the parties and the public from the grant or denial of the injunction and the actual likelihood of success on the merits. *Id; See JAK Prod.,* 986 F.2d 1080.

### A. Success on the Merits

■ The first factor considered under the Seventh Circuit's approach is the likelihood of the movant's success on the merits. In order to prevail on the merits RAM must show more than a mere suspicion or apprehension of injury. *Roland Machinery Co. v. Dresser Indus., Inc.,* 749 F.2d 380 (7th Cir. 1984); *Chem–Trend Inc. v. McCarthy,* 780 F.Supp. 458 (E.D.Mich.1991). "Ordinarily the party seeking a stay must show a strong or substantial likelihood of success. However, at a minimum the movant must show serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the stay is issued." *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n,* 812 F.2d 288 (6th Cir.1987).

In the present case, RAM has advanced several claims against the defendants. The court must address each in determining plaintiff's likelihood of success on the merits. However, while "likelihood of success on the merits" requires that the movant find support for its position in governing law the court notes that it should avoid deciding with any degree of certainty who will succeed or not succeed.

1. Breach of Non–Competition Covenant

■ To prevail on its breach of contract claim RAM must prove (1) the existence of a contract between itself and de-

fendant, which was (2) breached by the defendant, and which breach (3) caused injury to the plaintiff. *Stewart v. Rudner,* 349 Mich. 459, 84 N.W.2d 816 (1957). The party asserting the breach of contract bears the burden of proving his damages with reasonable certainty. *S.C. Gray, Inc. v. Ford Motor Co.,* 92 Mich.App. 789, 286 N.W.2d 34 (1979). Furthermore, only those damages that are the natural, direct and proximate cause of the breach are recoverable. *Stewart,* 84 N.W.2d at 823.

### a. Contract Validity

■■■■■ The first step is to prove the existence of a valid contract between the parties. This burden is on the plaintiff. *Associated Indem. Corp. v. Dow Chem. Co.,* 935 F.2d 800 (6th Cir.1991). Under Michigan law, a valid contract is not formed without the following essential elements: (1) parties competent to contract; (2) a proper subject matter; (3) a legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Thomas v. Leja,* 187 Mich.App. 418, 468 N.W.2d 58 (1991). In the present case, the parties were competent to contract. Neither party disputes that a signed employment contract exists or that the non-competition clause is contained therein. The disagreement centers around the scope of the non-competition agreement and defendants' alleged breach thereof as well as defendant Chauncey's claim of insufficient consideration.

### b. Breach

Plaintiff claims defendants breached an express non-competition covenant contained in an employment agreement between RAM and Chauncey. Defendants counter-argue that the agreement is unenforceable due to lack of consideration as well as plaintiff's alleged breach of certain terms of the contract. These arguments are issues best left to the trier of fact. It is not for this court to decide, at present, whether or not the contract was actually breached. The only issue under consideration is the likelihood that plaintiff could prevail on its breach of contract claim.

### c. Damages

Plaintiff has alleged damages in the form of lost profits, lost sales and loss of customer goodwill. This court cannot decide the ultimate validity of plaintiff's claims at this time, however, the court finds that plaintiff has alleged sufficient facts to at least make a claim for damages and potential irreparable harm.

### d. Summary

■■■■ The Seventh Circuit has consistently held over the past several years that district courts should apply the "better than negligible chance of succeeding on the merits" standard as part of the process of deciding to grant or deny injunctive relief. *See e.g., Erickson v. Trinity Theatre, Inc.,* 13 F.3d 1061 (7th Cir.1994); *Illinois Council on Long Term Care v. Bradley,* 957 F.2d 305 (7th Cir.), *cert. denied,* 506 U.S. 815, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992). The plaintiff does not need to prove his case beyond dispute. *Omega Satellite Products Co. v. City of Indianapolis,* 694 F.2d 119 (7th Cir.1982). The law is clear, a movant has some likelihood of succeeding on the merits of his claim where his chances are "better than negligible." *National People's Action v. Village of Wilmette,* 914 F.2d 1008 (7th Cir.1990). *cert. denied,* 499 U.S. 921, 111 S.Ct. 1311, 113 L.Ed.2d 245 (1991). This court finds that based on the foregoing facts, there is at least a "better than negligible possibility" of plaintiff's success on the breach of contract claim. However, this is just the first issue to consider in plaintiff's request for injunctive relief. The court next addresses plaintiff's additional claims.

### 2. Civil Conspiracy

■■■■■ A "civil conspiracy" is a combination of two or more persons, by some concerted action. to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means. *Admiral Ins.. Co. v. Columbia Cas. Ins. Co.,* 194 Mich.App. 300, 486 N.W.2d 351 (1992), *app. denied,* 442 Mich. 917, 503 N.W.2d 449 (1993); *Feaheny v. Caldwell,* 175 Mich.App. 291, 437 N.W.2d 358 (1988). To establish the existence of a civil conspiracy RAM must prove that two or more persons agreed and

acted in concert to commit an unlawful act, a "principal element of which is an agreement to inflict a wrong against or injury upon another." Moreover, there is no private civil action for conspiracy under the common law of Michigan. Rather, an allegation of conspiracy must be coupled with a substantive theory of liability to sustain a cause of action. *Anthony v. Madison,* 896 F.Supp. 714 (E.D.Mich.1995); *Mohammed v. Union Carbide Corp.,* 606 F.Supp. 252 (E.D.Mich.1985); *Earp v. City of Detroit,* 16 Mich.App. 271, 167 N.W.2d 841 (1969). This is the same in under Indiana law. Compare, *Indianapolis Horse Patrol, Inc. v. Ward,* 247 Ind. 519, 217 N.E.2d 626 (1966).

In the present case, RAM alleges that defendants Chauncey and Replex purposely formed a plan to compete against RAM, and that they intended to and did cause damages. A claim for civil conspiracy only exists where one of the parties to the conspiracy commits some act in furtherance of the agreement which is itself a tort. *Servpro Indus., Inc. v. Schmidt,* No. 94C 5866, 1997 WL 158316 at *15 (N.D.Ill. March 31, 1997); W. Prosser, Torts § 46, at 293 (4th ed. 1971). A breach of contract is not a tort and therefore may not serve as the basis for establishing a civil conspiracy. This leaves the plaintiff's allegations that Replex intentionally interfered with a contractual relations as the only basis for the conspiracy claim.

### 3. Intentional Interference With Contractual Relations

Plaintiff's Verified Complaint For Injunctive Relief asserts that defendant Replex intentionally interfered with a contractual relation.[4] This action falls under the realm of tort law. Under the previously discussed choice of law principles, the court will apply Michigan's law to this tort claim. The elements for tortious interference with a contract are: a contract; a breach; and the instigation of the breach without justification by the defendant. *Admiral Ins. Co.* 486 N.W.2d at 351; *Trepel v. Pontiac Osteopathic Hosp.,* 135 Mich.App. 361, 354 N.W.2d 341 (1984), *appeal denied; Dassance v. Nienhuis,* 57 Mich.App. 422, 225 N.W.2d 789 (1975), *reconsideration denied,* 534 N.W.2d 522 (1995). A claim of tortious interference requires a finding that the interference was improper. *Winiemko v. Valenti,* 203 Mich. App. 411, 513 N.W.2d 181 (1994). Mere interference for the purpose of competition is not enough to support a claim of tortious interference with a contract or with a prospective business advantage. *Trepel,* 354 N.W.2d at 345. Rather, a plaintiff must show illegal, unethical or fraudulent conduct in addition to the intentional interference.[5] *Id.* 354 N.W.2d at 346.

Under the current state of law in Michigan, one who alleges tortious interference with a contractual relationship must

---

4. Interference with a contract is a separate and distinct action from interference with a prospective business advantage. *See Northern Plumbing & Heating, Inc. v. Henderson Bros., Inc.,* 83 Mich. App. 84, 268 N.W.2d 296 (1978), *lv. den.,* 405 Mich. 845 (1979). Plaintiff does not specifically claim the latter, however, plaintiff's common allegations are more in line with a claim for interference with a business relationship. The basic elements which establish a *prima facie* claim are: the existence of a valid business relation or expectancy; knowledge of the relationship or expectancy on the part of the interferer; an intention interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted. *Feaheny v. Caldwell,* 175 Mich.App. 291, 437 N.W.2d 358 (1988). Regardless of whether the claim is for interference with a contract or with a business relationship this court finds the same outcome.

5. The elements for tortious interference with existing contractual relations were taken from 4 Restatement Torts, § 766. Comment h defines the relevant conduct required. "The word 'induces' refers to the situations in which A causes B to choose one course of conduct rather than another. Whether A causes the choice by persuasion or by intimidation, B is free to choose the other course if he is willing to suffer the consequences. Thus, inducement operates on the mind of the person induced. The phrase 'otherwise purposely causes' refers to situations in which A leaves B no choice, as for example, when A imprisons or commits such a battery upon B that he cannot perform his contract.... The essential thing is the purpose to cause the result." 4 RESTATEMENT TORTS § 766, Comment h, pp 54–55.

"prove the intentional doing of a *per se* wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights of another." *Bonelli v. Volkswagen of America, Inc.,* 166 Mich.App. 483, 421 N.W.2d 213 (1988), *appeal denied; Christner v. Anderson, Nietzke & Co., P.C,* 156 Mich.App. 330, 401 N.W.2d 641 (1986), *rev'd in part,* 433 Mich. 1, 444 N.W.2d 779 (1989). Where a defendant's actions were not *per se* wrongful and were "motivated by legitimate personal and business reasons" rather than by a desire to interfere with the plaintiff's contractual or business relationship, Michigan courts have refused to impose liability. *Bonelli, supra, 421 N.W.2d* at 220; *Christner, supra, 401 N.W.2d* at 641. Plaintiff's complaint alleges only that Replex "intentionally" and "wrongfully" interfered. It fails to allege illegal, unethical or fraudulent conduct. Based on these facts, the likelihood of success on the merits of plaintiff's claims for conspiracy and interference with contract are doubtful.

#### 4. Likelihood of Success Summary

█ It is this court's determination that plaintiff has some likelihood of success with respect to its breach of contract claim. This, however, is insufficient for issuance of a preliminary injunction. In isolation, the likelihood of success on the merits is meaningless. *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6 (7th Cir.1992). Continuing the analysis process, the "likelihood of success" factor must be weighed against the "balance of harm" factor. *Lawson Products, Inc. v. Avnet, Inc.,* 782 F.2d 1429 (7th Cir.1986). Because plaintiff's likelihood of success on the merits is relatively low, the court must now determine if the balance of harm weighs more heavily in favor of plaintiff or defendants. *Lawson,* 782 F.2d at 1434; *Haan Crafts Corp. v. Craft Masters, Inc.,* 683 F.Supp. 1234 (N.D.Ind.1988). First, however, the court must examine whether plaintiff has any other alternative, adequate remedies available.

#### B. Adequate Remedy at law

In order to obtain an injunction, the plaintiff must show the "threat of irreparable harm without adequate remedy at law." *Roth, supra; Roland Machinery,* 749 F.2d 380. Plaintiff basically asks this court to enjoin defendant Chauncey from working in the field in which he has been employed for over thirty years.[6]

█ Whether the plaintiff can establish that there is no adequate remedy at law is a requirement that is a vestige from the time when there were separate tribunals for legal and equitable relief and equity courts were only empowered to provide relief when no legal remedies were available or when those that were available were ineffective. 11 WRIGHT AND MILLER, INJUNCTIONS § 2944, pp. 392–94 (1973); *Cervantes v. Perryman,* 954 F.Supp. 1257 (N.D.Ill. 1997). When the remedy sought at trial is damages, the adequacy of the remedy at law is measured by ascertaining whether the plaintiff will be made whole if he prevails on the merits. *Roland Machinery,* 749 F.2d at 386. Where an award of monetary or other legal damages will make the plaintiff whole after trial, an adequate remedy at law exists. Therefore, when economic loss can be calculated and compensated by monetary damages, there is generally no claim for irreparable injury. *See Basicomputer,* 973 F.2d at 511.

█ In the current case, the plaintiff has asserted claims alleging lost profits, loss of customer goodwill, and disclosure of trade secrets and other confidential information. While there is no bright-line rule regarding irreparable injury, loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute. *See Ferrero v. Assoc.*

---

**6.** The RAM employment agreement specifically stated that for a period of one year following termination of employment, defendant would not "own, manage, control or participate in the ownership, management or control of, or be employed or engaged by or otherwise affiliated or associated as a consultant, independent contrac-tor or otherwise with any other corporation, partnership, proprietorship, firm, association, or other business entity or otherwise engage in any business, which competes with the business of Company (as conducted on the date Employee ceases to be employed by Company in any capacity)."

*Materials, Inc.,* 923 F.2d 1441 (11th Cir. 1991); *Merrill Lynch,* 836 F.Supp. at 433. Similarly, the loss of fair competition that results from the breach of a non-competition covenant may irreparably harm an employer. *See Overholt Crop Ins. Serv. Co. v. Travis,* 941 F.2d 1361 (8th Cir.1991). When this type of covenant is involved some courts have found monetary damages insufficient. Others have concluded differently. *See Clemente v. Pearle Vision, Inc.,* 762 F.Supp. 1518 (D.Me.1991) (holding that a company's good will can be compensable in money damages); *Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Co.,* 604 F.2d 755 (2d Cir.1979) (damages resulting from the loss of customers is provable, recoverable at law, and therefore not grounds for a preliminary injunction); *Hayes–Albion v. Kuberski,* 421 Mich. 170, 364 N.W.2d 609 (1984) (holding that the remedy for use of information about a client's needs in violation of an agreement respecting the employee's providing services to the customer after termination is money damages). However, the fact that the movant may assert a valid damages claim does not necessarily preclude issuance of a preliminary injunction, because damages relief may not fully compensate the movant for being denied its rights. *Glenwood Bridge, Inc. v. City of Minneapolis,* 940 F.2d 367, 369 (8th Cir.1991), *reh'g denied; Curtis 1000,* 878 F.Supp. at 1248.

■ It is this court's opinion that plaintiff will only suffer irreparable harm if the defendants knowingly and deliberately undercut plaintiff's pricing to lure away customers, if defendants are knowingly and purposely sabotaging plaintiff's good will, or if Chauncey has misappropriated valid trade secrets or confidential information. While the record shows that plaintiff's chances of establishing those claims are slight, the court must still consider the possibility in weighing the balance of harms.

### C. Balance of Harm

■ In considering a request for a preliminary injunction, a district judge must choose the course of action that will minimize the cost of being mistaken. *American Hosp. Supply v. Hospital Prod., Ltd.,* 780 F.2d 589 (7th Cir.1986)[7]. If the judge grants the injunction and it later turns out that the plaintiff was not entitled to any judicial relief, the judge commits a mistake whose gravity is measured by the irreparable harm, if any, that the injunction causes to the defendant while it is in effect. *Haan Crafts,* 683 F.Supp. at 1244.[8] Conversely, if the judge denies the injunction and it later turns out the plaintiff is entitled to judicial relief, the judge commits a mistake whose gravity is measured by the irreparable harm, if any, that the denial of the injunction caused the plaintiff. *Id.* Under the Seventh Circuit's "sliding scale" approach, "the more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh towards its side; the less likely it is the plaintiff will succeed, the more the balance need weigh towards its side." *Abbott Labs.,* 971 F.2d at 12; *Gateway Eastern Ry. Co.,* 35 F.3d at 1137; *Duct–O–Wire,* 31 F.3d at 509. This sliding scale is subjective and intuitive, one which permits district courts to weigh the competing consideration and mold appropriate relief. *Abbott Labs.,* 971 F.2d at 12. The balance of harm analysis examines the harm of granting or denying the injunction upon the parties to the dispute as well as upon other interested parties, including the public. *Glenwood Bridge,* 940 F.2d 367. Potential economic harm to each of the parties and to interested third parties of either granting or denying the injunction is particularly relevant. *Baker Elec. Co-op., Inc. v. Chaske,* 28 F.3d 1466 (8th Cir.1994). In the present case, the plaintiff's likelihood of success is not overwhelming. Furthermore, there is a conflict of opinion as to whether the plaintiff can be adequately compensated by money damages. Therefore, the balance of harm must weigh more heavily in favor of plaintiff than defendant before an injunction should issue.

### 1. Harm to RAM

■ In evaluating the harm that may occur in the event that the court does not

---

7. Judge Posner considered the "balance of harm" issue in depth in this case.

8. Decided by Chief Judge Allen Sharp of this court.

grant an injunction, the court must consider three factors: 1) the substantiality of the injury alleged; 2) the likelihood of its occurrence, and 3) the adequacy of the proof provided. *Celebrezze,* 812 F.2d 288; *Consumer Satellite,* 1994 WL 669673 at *6. Any illusory harm to the plaintiff will not outweigh any actual harm to the defendant. *Frank B. Hall & Co. v. Alexander & Alexander, Inc.,* 974 F.2d 1020 (8th Cir.1992). Plaintiff has alleged specific harms. The court addresses each below.

### a. Misappropriation of Trade Secrets and Confidential Information

Plaintiff has argued that it will suffer irreparable harm in the absence of a preliminary injunction because the disclosure of its trade secrets and other confidential information would prove damaging in the competitive market.

 Michigan law defines a "trade secret" as any formula, pattern, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. *Uniroyal Goodrich Tire Co. v. Hudson,* 873 F.Supp. 1037 (E.D.Mich.1994), *aff'd,* 97 F.3d 1452 (6th Cir. 1996). "A 'trade secret' may be a formula ..., a process of manufacturing ..., a pattern for a machine or other device, or a list of customers." *Hayes–Albion,* 421 Mich. 170, 364 N.W.2d 609; *Uniroyal,* 873 F.Supp. at 1040. To determine if information is protected as a trade secret the court looks at the extent to which the information is known outside the business, the extent to which it is known by employees and others involved in the business, the extent of the measures taken by the owner of the information to guard its secrecy, the value of the information to the holder and its competitors, the amount of effort or money expended in developing the information, and the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Nalco Chem. Co. v. Hydro Technologies, Inc.,* 984 F.2d 801 (7th Cir.1993); *Uniroyal,* 873 F.Supp. at 1041; RESTATEMENT (SECOND) OF TORTS, § 757, Comment b.

In the present case, RAM alleges that defendant Chauncey has and will continue to disclose trade secrets if not enjoined.[9] RAM also contends that Chauncey has disclosed confidential information in the form of price lists, customer lists, and strategic planning information taken from "confidential" discussions at RAM. (Transcript of proceedings at 37–43, February 5, 1997). Both the plaintiff and defendants agree that Chauncey did not remove any documents, data, or records from RAM. (Tr. at 43 & 60). In fact, Chauncey states that when he began his employment with Replex he was specifically instructed by them not to disclose any confidential information or documents. (Tr. at 71). Furthermore, defendant Chauncey claims that he has no knowledge of the operations or construction of any machines or equipment at RAM, as that is not his area of expertise. (Tr. at 63). Based on the three factors enumerated in *Celebrezze, supra,* the substantiality of injury could be significant, if trade secrets were actually disclosed. However, it is this court's opinion that the likelihood of disclosure is minimal, based on the lack of proof provided by RAM.

 The court also needs to consider plaintiff's claim regarding the disclosure of confidential information. Court opinions differ regarding what is "confidential" and whether restrictive covenants will be enforced in this type of situation. *See La Calhene, Inc. v. Spolyar,* 938 F.Supp. 523 (W.D.Wis.1996) (holding that a company's detailed customer list did not meet the criteria for 'trade secrets' because the information contained therein was general in nature and much of it was readily ascertainable from other sources. Also holding that company's strategic marketing plans were subject to trade secret protection); *Brunswick Corp. v. Jones,* 784 F.2d 271 (7th Cir.1986) (confidential marketing strategies, financial perfor-

---

**9.** Plaintiff specifically alleges that defendant Chauncey was "provided with confidential information and trade secrets of RAM. (Complaint at 3). Plaintiff further alleges that defendants Chauncey and Replex "planned and intended to harm RAM" by using this information in competition. Additionally, plaintiff states that RAM has "specialized equipment" of which defendant Chauncey has knowledge. (Tr. at 34).

mance and projections were protectable); *Economation, Inc. v. Automated Conveyor Sys., Inc.,* 694 F.Supp. 553 (S.D.Ind.1988) (finding that price quotations were not cognizable trade secrets and not entitled to protection where the price quotation information was provided to customers and thus readily ascertainable before the salesmen left the company's employment to work for a competitor); *Chem–Trend,* 780 F.Supp. at 461 (holding that pricing strategies and quotes used by plaintiff to obtain and maintain customers in the face of stiff competition was protectable); *Follmer, Rudzewicz & Co., P.C v. Kosco,* 420 Mich. 394, 362 N.W.2d 676 (1984) (recognizing that if an employee had access to confidential information that provides him with an unusual opportunity to obtain the patronage of clients of his former employer, the employer could enforce an agreement requiring the former employee to pay for the use of such information). However, it is uniformly held that "general knowledge, skill, or facility acquired through training or experience while working for an employer appertain exclusively to employee." *Follmer,* 362 N.W.2d at 680; *See also,* RESTATEMENT (SECOND) OF AGENCY § 396(b). Furthermore, that knowledge and skill can be utilized by the employee after terminating his employment. *Kelsey–Hayes,* 765 F.Supp. at 407; *Follmer, supra; Eaton Corp. v. Appliance Valves Corp.,* 526 F.Supp. 1172 (N.D.Ind.1981), *aff'd,* 688 F.2d 842 (7th Cir. 1982).

If defendant is disclosing confidential information, the harm to RAM is potentially great. There is some likelihood that defendants are using some of plaintiff's information for their competitive advantage, however, it is not clear to this court that the information in question is actually "confidential". Given the facts alleged in plaintiff's verified complaint and the testimony provided at the February 5, 1997 hearing it is this court's opinion that RAM has not presented sufficient evidence to conclude that defendants are utilizing or disclosing trade secrets. With respect to disclosure of confidential information, there is some potential merit to the claim. While this issue must be decided on the merits, for the purpose of determining whether or not an injunction should issue the court finds that some potential, however slight, for irreparable harm to RAM exists in this instance.

#### b. Loss of Good Will

Loss of customer goodwill and fair competition can support a finding of irreparable harm. *Superior Consulting Co., Inc. v. Walling,* 851 F.Supp. 839 (E.D.Mich.1994), *appeal dismissed,* 48 F.3d 1219 (6th Cir. 1995). Such losses often amount to irreparable injury because the resulting damages are difficult to calculate. *Basicomputer,* 973 F.2d at 511–12; *Superior Consulting,* 851 F.Supp. at 847; *Spiegel v. City of Houston,* 636 F.2d 997 (5th Cir.1981), *reh'g denied,* 641 F.2d 879 (5th Cir.) (holding that loss of customers and good will gives rise to irreparable injury); *Rent–A–Center v. Canyon Television & Appliance Rental, Inc.,* 944 F.2d 597 (9th Cir.1991) (intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm).

In this case, RAM alleges that defendant Chauncey is giving representatives and manufacturers information about RAM's marketing that is not true. (Tr. at 37). RAM claims that this has significantly harmed its business dealings. If this is occurring, the potential harm to RAM could be significant. Unfortunately, RAM's proof regarding this issue is vague and speculative. RAM relies on second-hand conversations and even admits on record that it cannot prove the defendant made certain statements. As a result, this factor does not lend much support to plaintiff's request for injunctive relief.

#### c. Lost Profits

■ Lost profits represent actual damages and are compensable. Therefore they are not proper grounds for an injunction. *Hayes–Albion,* 364 N.W.2d at 616.

#### 2. Harm to Chauncey and Replex

■ The harm to defendant Chauncey is potentially great. At best, the defendant may be unable to find employment at a similar level and could lose his insurance and benefits. Under the worst scenario, the defendant could have difficulties finding any employment, due to the fact that he is near retirement age as well as the fact that all of

his previous work experience has been in the plastics industry. If an injunction prevented defendant from obtaining a comparable position it would severely impact his earning potential and could cause irreparable injury to him.

 The harm to defendant Replex will likely be insignificant. Replex can hire a replacement for Chauncey. Replex will remain in business and should not lose customers if Chauncey is enjoined from working for them.

 Also considered in the "balance of harm" analysis is whether the defendant has already voluntarily taken remedial action. *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d at 484 (8th Cir.1993). The court notes that defendant Chauncey testified he has not disclosed any confidential information, did not take any records or documents with him, does not have knowledge of trade secrets regarding RAM's machinery and was specifically instructed by Replex not to disclose any confidential information to them.

Case law supports denial of a preliminary injunction where an employer fails to show a reasonable likelihood of establishing the existence of any trade secrets and any misappropriation thereof, and does not show that it would suffer irreparable harm. *See Eaton Corp.*, 526 F.Supp. at 1181–82. Where, as in this case, an injunction would likely destroy defendant financially, while damage the former employer might sustain in competition would not result in total devastation an injunction is not the appropriate remedy. *Id.* At this point in the analysis, Plaintiff has not yet persuaded this court that injunctive relief is required.

### 3. Harm to Others

 This factor is most commonly evaluated in terms of the balance of hardship between the parties. *Superior Consulting*, 851 F.Supp. at 848; *see* Wright & Miller, Federal Practice and Procedure: Civil § 2948. In the present case, while the plaintiff may be harmed by disclosure of confidential information, that harm is reparable. Defendant Chauncey will be irreparably harmed if enjoined from working and unable to obtain other suitable employment. Both harms are speculative at this point, and tend to balance each other. However, there are additional potential harms to consider. Chauncey is an Indiana resident. The state of Indiana has expressed its public interest in not restricting the opportunity of an individual to follow any trade for which he is fit and from which he can earn his livelihood. *Consumer Satellite*, 1994 WL 669673 at *6. If an injunction issues there is a potential, although slight, for harm to Indiana. Also a consideration is the fact that a customer has a right to deal with the person he chooses. To enjoin an employee from providing services could unnecessarily infringe on the customer's exercise of choice in the person with whom he deals. *Hayes–Albion*, 364 N.W.2d at 615; *see, generally, International News Service v. Associated Press*, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918). Thus, should an injunction issue, there is potential harm to the public in preventing free competition.

### 4. Summary of Balance of Harms

The balance of harms does not tip decidedly in favor of either plaintiff or defendant. Plaintiff has a legitimate claim against the disclosure of trade secrets and confidential information. On the other hand, defendant has a legitimate right to pursue employment in his area of expertise and training. The harm to plaintiff is unknown. Plaintiff has a firmly established business. Many of plaintiff's claims regarding misappropriation of trade secrets and confidential information are questionable, as detailed *supra*. Furthermore, RAM and Replex are not the only companies competing for business in the plastics market. Plaintiff does not maintain an "exclusive" customer base. The record shows that customers seeking the products provided by both RAM and Replex typically purchase from more than one source. These facts make it more difficult for plaintiff to prove that defendants caused loss of business and profits. As a result, the court must continue its analysis before deciding whether a preliminary injunction is appropriate in the current situation.

### D. Public Interest Factors

 The court must also determine the impact of a preliminary injunction upon the public interest. *Merrill Lynch,* 836 F.Supp. at 434. The public interest factor frequently invites the court to indulge in broad observation about conduct that is generally recognizable as costly or injurious. *See Baker Elec.,* 28 F.3d at 1474; *James River Flood Control Ass'n v. Watt,* 680 F.2d 543 (8th Cir.1982). Competing public interest factors clearly exist in the present case. There is a public interest in honoring and enforcing non-compete agreements that are valid under Michigan law. *See Orbach, supra; Grall,* 836 F.Supp. at 434 (the overriding public interest is the honoring and enforcement of noncompete agreements ... providing the restriction in the agreements are reasonable); *Kramer,* 816 F.Supp. at 1248 (the public has an interest in the performance of contracts. To deny injunctive relief in this case would cast doubt on the integrity of contractual agreements). In contrast, public policy under Indiana law disfavors non-compete agreements. *See Smart Corp. v. Grider,* 650 N.E.2d 80 (Ind.Ct.App.1995), *reh'g denied; JAK Prod.,* 986 F.2d 1080; *In re Uniservices, Inc.,* 517 F.2d 492 (Ind.Ct. App.1975). Furthermore, public policy disfavors restraints on trade and interference with a person's livelihood and warrants strict examination of non-competition covenants. *Superior Consulting,* 851 F.Supp. at 848.

 Even though current Michigan law favors non-compete agreements, under that law, the agreements are enforceable "only to the extent reasonably necessary to protect the employer's reasonable competitive business interests." *Half,* 784 F.Supp. 1263 (*citing* Mich. Comp. Laws Ann. § 445.774a(1)). This court must consider the reasonableness of the challenged agreement and will do so *infra.*

### E. Balancing the Four Factors

 None of the above four factors is controlling in determining whether to issue a preliminary injunction. *Lawson Products,* 782 F.2d 1429. The court must weigh them all together in an attempt to reach a just result that will maintain the *status quo* pending final resolution on the merits and that will avoid the error that is more economically costly in the particular circumstances. *See, generally, American Hosp. Supply,* 780 F.2d at 593; *Haan,* 683 F.Supp. 1234.

This court finds, based on all of the factors discussed thus far, that the balance leans slightly in favor of RAM. The court is still not persuaded, however, that injunctive relief is the most appropriate remedy in this particular case. If there were no other facts to consider, this court would deny injunctive relief. However, the analysis is not yet complete. Although federal rather than state standards apply for the issuance of a preliminary injunction, the court must, nonetheless, consider one more factor before determining whether the injunction should issue in this case. This issue arises because the parties included in their contract a clause providing that an injunction is available upon a showing of breach of the terms of the agreement.

### F. Stipulated Grounds for Injunction

The parties to the present action, in the contract for employment, appear to have stipulated to a lower threshold for invocation of injunctive relief. The employment agreement states that "upon adequate proof of Employee's violation of any legally enforceable provision of this paragraph 2, Company shall be entitled to immediate injunctive relief and may obtain a temporary order restraining any threatened or further breach." The parties' stipulation that a breach of the terms of the agreement is sufficient ground for the issuance of an injunction finds support in Michigan law. *See* M.C.L.A. § 445.774. Also, such a provision is not at odds with Seventh Circuit standards for issuance of an injunction. This circuit relies on a "balance of harms" test and requires a showing of irreparable harm. In the present case, RAM's strongest claim is its claim for breach of contract. Other federal courts have found that irreparable harm "can be inferred from a trial court's actual finding of a breach [of a restrictive covenant] by the defendant." *See JAK Prod.,* 986 F.2d at 1084; *Curtis 1000,* 878 F.Supp. at 1250, *Overholt,* 941 F.2d at 1371. This court is persuaded that the parties' contractual standard for issuance of a preliminary injunction

might be sufficient to invoke an injunction. The principle of freedom of contract takes precedence in a context where courts have already accepted that certain restraints on trade are acceptable, as shown below in the discussion of covenants not to compete. This court, in accepting the parties' stipulation to the grant of a preliminary injunction, does not surrender its power. Rather, the court maintains its authority to enforce any injunction only to the extent found reasonable. This matter is considered below.

## VI. THE COVENANT NOT TO COMPETE

Non-competition clauses in employment contracts have been the source of litigation for over 500 years. Harlan M. Blake, *Employee Agreements Not to Compete*, 73 HARV.L.REV. 625 (1960). Every time a non-competition clause is litigated, the court is forced to grapple with two conflicting policies, freedom to contract and the doctrine against contractual restraints of trade. Peter J. Whitmore, *A Statistical Analysis of Noncompetition Clauses in Employment Contracts*, 15 J.CORP.L. 483 (1990); *Curtis 1000*, 878 F.Supp. at 1256. The first policy has been protected by American courts since the early nineteenth century to 'encourage individual entrepreneurial activity.' *Id.* The second doctrine is "[o]ne of the oldest and best established ... [contract] policies developed by the courts." *Id.* (*citing* E. Farnsworth, CONTRACTS at 335 (1982)).

■■■■ In order to obtain injunctive relief, the plaintiff must not only show the existence of a valid contract and a breach thereof, but must also show that the non-competition covenant was "reasonable". It is well settled that the language of contracts must be strictly construed against the interest of the drafter. *Kelsey–Hayes Co. v. Maleki*, 765 F.Supp. 402 (E.D.Mich.1991), *vacated pursuant to settlement*, 889 F.Supp. 1583 (*quoting*, *Higgins v. Lawrence*, 107 Mich. App. 178, 309 N.W.2d 194 (1981)). If a non-competition covenant is found unreasonable

the court may "blue-line" the agreement to render it reasonable.[10]

### A. Covenants Under Michigan Law

■■■■ Originally, Michigan did not permit non-competition covenants. *Kelsey–Hayes*, 765 F.Supp. at 406. This, however, changed when Public Act 1984, No. 274, § 4a was added by Public Act 1987, No. 243, § 1. The new Michigan law provides as follows:

(1) An employer may obtain from an employee an agreement or covenant which protects an employer's reasonable competitive business interests and expressly prohibits an employee from engaging in employment or a line of business after termination of employment if the agreement ... is reasonable as to its duration, geographical area, and the type of employment.... To the extent any such agreement ... *is found to be unreasonable in any respect, a court may limit the agreement to render it reasonable* in light of the circumstances in which it was made and specifically enforce the agreement as limited.

M.C.L.A. 445.774a(1) (emphasis added). This law became effective December 28, 1987. Under this statute, preventing the anticompetitive use of confidential information is a legitimate business interest. *See Superior Consulting*, 851 F.Supp. 839. However, according to the Michigan courts, the 1987 enactment does not remove such covenants from disfavored status, and narrowly limits them to "reasonableness" in protecting only a competitive interest, duration, geographic area, and type or employment. *Kelsey–Hayes*, 765 F.Supp. at 406. Reasonableness is decided by examining several factors. *Id.* This includes the consideration supporting the agreement, the economic hardship imposed on the employee, the public interest, and whether the employer has a legitimate business interest for the protection of which a restriction is reasonable. *Id.* (*quoting Hasty v. Rent–A–Driver, Inc.*, 671 S.W.2d 471 (Tenn.1984)). Furthermore, such an interest must be something greater than mere

---

10. "Blue-lining" is the practice of modifying an unreasonable contract so that it becomes reasonable and enforceable. *See Hubbard v. Miller*, 27 Mich. 15 (1873); *Follmer*, 420 Mich. 394, 362 N.W.2d 676; *Half*, 784 F.Supp. 1263.

competition, because prohibition of competition is in restraint of trade. *Kelsey–Hayes,* 765 F.Supp. at 407. This court is persuaded by the decision of Judge Diggs Taylor in *Kelsey–Hayes* regarding the application of the above factors in determining reasonableness of noncompetition covenants. The court further agrees that the logic of *Follmer,* concerning the difference between skills and secrets still controls. *See Follmer,* 362 N.W.2d 676; *Kelsey–Hayes,* 765 F.Supp. at 407. Using this standard, the court now addresses the RAM agreement.

### B. Reasonableness of the RAM Covenant

 Covenants not to compete are contractual agreements, and as such require consideration to support them. Typically, continued employment constitutes "sufficient consideration for a defendant's execution of a restrictive covenant in an Employment Agreement—where, as here, the defendant's employment is otherwise 'at will.'" *Half,* 784 F.Supp. at 1273. The court finds no merit in defendant Chauncey's position that the covenant was void for lack of consideration. The reasonableness of the agreement is a different matter. First, the agreement is not reasonable is scope. As the courts found in *Chem–Trend, Kelsey–Hayes,* and *Follmer,* an agreement that unduly limits a former employee's freedom to go into business for another extracts an excessive price and is unreasonable, hence unenforceable. 780 F.Supp. 458, 765 F.Supp. 402, 420 Mich. at 395, 362 N.W.2d 676. Such is the case with the current agreement. Under the terms of RAM's agreement Chauncey cannot work for any business in any capacity if the business competes with RAM. In light of the circumstances surrounding the present case, this is unreasonable. Defendant Chauncey is fifty-nine years old. He has worked in the same industry for over thirty years. He worked for RAM on two separate occasions for a total of seven years. Only one year, or less, was spent as Vice–President of Sales and Marketing before Chauncey was terminated. Furthermore, as this court previously noted, much of what plaintiff is claiming as "confidential" or "trade secret" is not necessarily protected. "It has been uniformly held that general knowledge, skill or facility

acquired through training or experience while working for an employer appertain exclusively to the employee. The fact that they were acquired or developed during employment does not, by itself, give the employer a sufficient interest to support a restraining covenant, even though the on-the-job—training has been extensive and costly." *Blake,* Employment Agreements Not to Compete, 73 Harvard Law Review 625 (1960) *Follmer,* 420 Mich. 394, 362 N.W.2d 676. Defendant Chauncey brought considerable experience and knowledge with him to RAM. Similarly, he brings his experience with him to his current employer, Replex. This is not the proper subject matter for a restrictive covenant.

## VII. RELIEF

The problem for the court is to enjoin only that conduct that is the subject of the claims on which the court concludes the plaintiff has a substantial likelihood of success on the merits. *Chem–Trend,* 780 F.Supp. at 463. Those claims are for breach of contract and the potential disclosure of trade secrets and confidential information.

### A. Scope of Injunction

 To the extent the agreement provides protection for the confidential information of RAM, it does not violate the statute and is enforceable. To the extent it goes beyond what is reasonably necessary for the protection of confidential information, it is unenforceable. As the courts in *Follmer* and *Kelsey–Hayes,* this court now enforces the agreement to the extent it is reasonable. Therefore, this court holds that defendant Chauncey may continue his employment with Replex subject to the following limitations.

1. Defendant Chauncey is restrained from and will cease and desist from disseminating by any medium, RAM's marketing plans, strategies, inventions, ideas, discoveries, and manufacturing methods, product research or engineering data or other trade secrets of RAM. In addition, Chauncey will not disseminate price lists or any other information gained in confidential "strategic planning" sessions.

2. Defendant Chauncey will refrain from soliciting the trade or patronage of any customers that were exclusively RAM's at the time Chauncey was terminated from his employment at RAM.

3. The one year time limit and the geographic limitation in the RAM agreement are reasonable and enforceable as modified by 1 and 2 above, therefore, these restrictions are in effect immediately until and including December 31, 1997.

### B. Bond Requirement

Federal Rule of Civil Procedure 65(c) provides:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant. . . .

On its face the rule admits of no exceptions. Some courts have held that the requirement is mandatory. The Seventh Circuit is one of those. *See, e.g., Gateway Eastern Ry,* 35 F.3d at 1141 (court has discretion only in determining the amount of bond to be posted). The Sixth Circuit requires only that the district court expressly address the question of whether a bond is required as security for a preliminary injunction, but leaves the ultimate decision as to whether or not to invoke bond to the trial judge's discretion. *USACO Coal Co. v. Carbomin Energy, Inc.,* 689 F.2d 94 (6th Cir.1982); *Roth v. Bank of the Commonwealth,* 583 F.2d 527 (6th Cir.1978), *cert. dismissed,* 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979). Courts of other jurisdictions require that the posting of a security bond by the party seeking a preliminary injunction is required when a risk of financial harm exists for the party to be enjoined. *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797 (3d Cir.1989), *reh'g denied.*

When originally adopted, however, Fed. R.Civ.P. 65(c) authorized the federal courts to grant injunctions "with or without security, in the discretion of the court or judge." See Judiciary Act of 1911, ch. 231 § 263, 36 Stat. 1087, 1162; Act of June 1, 1872, ch. 255, § 7, 17 Stat. 196, 197. Congress repealed the applicable section of the Judiciary Act of 1911 and provided that an injunction could not be issued unless the plaintiff posted a bond in a "proper" amount. See Clayton Act, ch. 323, §§ 17–18, 38 Stat. 730, 737–38 (1914). This language was incorporated into the Judicial Code of 1926 § 382, 44 Stat. pt. 1, 863, 909, and the language ultimately found in the present Rule 65(c).

In view of the express language of Rule 65(c) and the recent Seventh Circuit decision, this court believes requiring a bond in some amount is mandated. The amount of the bond, however, is plainly in the discretion of the district court. *Gateway Eastern Ry.,* 35 F.3d at 1141. Determining an appropriate amount of bond, given the imprecise measure of some of the elements of damage, can be difficult This court now fixes the amount of the bond to be $75,000.00 with corporate surety to be approved by the court.

### VIII. CONCLUSION

For the reasons set forth above, Plaintiff's Complaint for Injunctive Relief is GRANTED IN PART as modified by this court. This injunction is to remain in effect until December 31, 1997. Plaintiff is ordered to post bond in the amount of $75,000.00. The issue of damages is to be resolved after a full trial on the merits as soon as possible. This case is again referred to Magistrate *Judge* Pierce for further a settlement conference.

IT IS SO ORDERED.